T_____ H_____, on behalf of herself, and all other persons similarly situated, Plaintiff,

v.

Evan E. JONES, Jr., Individually and in his capacity as the Director of the Utah State Division of Family Services, et al., Defendants.

No. C 74–276.

United States District Court,
D. Utah, C. D.

July 23, 1975.

David S. Dolowitz, Salt Lake City, Utah, for plaintiff.

Frank V. Nelson, Asst. Atty. Gen., Salt Lake City, Utah, for defendants.

Before LEWIS, Chief Judge, RITTER, Chief District Judge, and ANDERSON, District Judge.

## OPINION

LEWIS, Chief Judge.

In this class action we consider the legality under federal law of state regulations that prohibit the Utah Planned Parenthood Association (UPPA) from providing minors with family planning assistance absent parental consent. Under 42 U.S.C. § 1983 the plaintiff seeks a declaratory order to the effect that these regulations violate her rights under federal statutes and the United States Constitution, and she seeks an injunction against their continued enforcement. A three-judge court was duly empaneled to hear her case. Our jurisdiction,

which is not disputed, arises from 28 U.S.C. § 1343(3) and (4).

Pursuant to plans approved by the Department of Health, Education and Welfare (HEW), the State of Utah administers Aid to Families with Dependent Children (AFDC) and Medicaid, both of which programs are subsidized by federal funds and regulated under the Social Security Act of 1935, as amended, 42 U.S.C. § 601 *et seq.*; 42 U.S.C. § 1396 *et seq.* Federal law requires states participating in these programs to provide family planning assistance to those program recipients, including sexually active minors, who desire such assistance. 42 U.S.C. § 602(a)(15); 42 U.S.C. §§ 1396a(a)(8), 1396d(a)(4)(C). The state contracted with the UPPA for the latter to provide family planning services and supplies to AFDC and Medicaid recipients. Regulations FPX 120, FPC 120, and 3.7(c), which were adopted by the defendant state administrators and approved by HEW as part of the state's AFDC and Medicaid plans, provide that family planning services to minors may be furnished only with written consent of the minor's parents.

At the time this action was filed, the plaintiff was fifteen years old. She is a member of a family receiving AFDC and Medicaid. She has sought family planning information, counseling, services, and supplies from the UPPA, but because she refuses to obtain permission of her parents the UPPA has, pursuant to regulations FPX 120, FPC 120, and 3.7(c), denied her assistance. She therefore challenges the state's regulations on the grounds that they violate her rights to family planning assistance under the Social Security Act and her right of privacy under the fourteenth amendment. In this action plaintiff T____ H____ represents herself and all other minors in the state who receive or who are eligible to receive either AFDC or Medicaid or both, and who seek family planning assistance from the UPPA.

■ In *Doe v. Planned Parenthood Ass'n*, 29 Utah 2d 356, 510 P.2d 75, the Utah Supreme Court held that the state's parental consent requirements do not violate the

rights of minors under either the ninth amendment or the equal protection clause of the fourteenth amendment. In a summary order and without citation of authority, the United States Supreme Court dismissed Doe's appeal for want of jurisdiction. 414 U.S. 805, 94 S.Ct. 138, 38 L.Ed.2d 42. The defendants in the present action argue that the high court's summary dismissal in *Doe v. Planned Parenthood Ass'n* forecloses our examination of the issues raised by plaintiff T____ H____. Our reading of Doe, however, leads us to conclude that the Utah court did not rule on the validity of defendants' parental consent regulations with respect to the constitutional right of privacy or the federal statutory restrictions that are the subject of this case. Accordingly the law of the case has not been established by the United States Supreme Court's summary dismissal of the appeal from that case.

We hold first that the state's regulations impermissibly engraft upon AFDC and Medicaid eligibility requirements a condition in conflict with the provisions of the Social Security Act. Second we hold that the state's regulations infringe upon the plaintiff's right to privacy unjustified by any compelling state interest in regulation.

I.

■ As a preliminary matter, the defendants request the appointment of a guardian ad litem to represent the plaintiff T____ H____ in this litigation in accordance with Fed.R.Civ.P. 17(c). The pertinent portion of that Rule is as follows:

The court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant or incompetent person.

Neither the appointment of a guardian ad litem nor a protective order in lieu of such appointment is mandatory so long as we determine that the plaintiff is adequately protected in this litigation without a guardian. *Jacobs v. Board of School Comm'rs*, 7 Cir., 490 F.2d 601, 604, *vacated as moot*, 420

U.S. 128, 95 S.Ct. 848, 43 L.Ed.2d 74 (1975); *Roberts v. Ohio Cas. Ins. Co.,* 5 Cir., 256 F.2d 35, 39; *Rotzenburg v. Neenah Joint School Dist.,* E.D.Wis., 62 F.R.D. 340. We have considered the following facts in making that determination. First, the plaintiff in this action asserts her own statutory and constitutional rights independent of her parents, who are her guardians under Utah law. Second, the plaintiff does not seek monetary relief but raises statutory and constitutional claims aimed at declaratory and injunctive relief. Third, the plaintiff is represented by able and experienced counsel. These circumstances, we believe, eliminate the need for appointment of a guardian ad litem or other protective order. *Jacobs v. Board of School Comm'rs, supra,* 490 F.2d at 604; *Rotzenburg v. Neenah School Dist., supra.* We therefore refuse defendants' request.

## II.

States that desire to take advantage of the substantial federal assistance funds from the AFDC and Medicaid programs are required under 42 U.S.C. §§ 601 and 1396 to submit plans for approval of the Secretary of HEW. These plans must conform with the requirements of the Social Security Act and with relevant regulations promulgated by HEW. 42 U.S.C. §§ 602, 1396a; *King v. Smith,* 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118. Although the states have considerable latitude in shaping these assistance programs, they may not depart from pertinent federal statutory and administrative guidelines. Thus the Supreme Court has repeatedly held that state AFDC eligibility standards that exclude persons eligible for assistance under federal AFDC guidelines violate the Social Security Act, 42 U.S.C. § 602(a)(10), and are therefore invalid under the supremacy clause of the Constitution. *Carleson v. Remillard,* 406 U.S. 598, 92 S.Ct. 1932, 32 L.Ed.2d 352; *Townsend v. Swank,* 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448; *King v. Smith,* 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118. Most recently the Supreme Court has held in a per curiam opinion that state regulations may not, consistent with this line of cases, engraft upon AFDC eligibility requirements a condition in conflict with 42 U.S.C. § 602(a), which sets forth standards for state AFDC plans. *Lascaris v. Shirley,* 420 U.S. 730, 95 S.Ct. 1190, 43 L.Ed.2d 583 (1975). Although none of these cases deals directly with the validity of state limitations on the provision of federally-funded family planning services through AFDC or Medicaid, we believe that the principle of review is the same: to the extent that the states impose conditions on the provision of these services in conflict with federal standards, the latter must prevail.

We turn now to the specific federal standards claimed by plaintiff to conflict with the state's regulations FPX 120, FPC 120, and 3.7(c). 42 U.S.C. § 602(a)(15) provides in part that state plans for the administration of AFDC must provide

> for the development of a program, for each appropriate relative and dependent child receiving aid under the plan . . . for preventing or reducing the incidence of births out of wedlock and otherwise strengthening family life, and for implementing such program by assuring that in all appropriate cases (including minors who can be considered to be sexually active) family planning services are offered to them and are provided promptly . . . to all individuals voluntarily requesting such services . . . . .

We observe two salient features of this provision, which were among the 1972 amendments to Title IV A of the Social Security Act. First, the purpose behind Congress' requiring the states to provide family planning assistance is the prevention of births out of wedlock and, thereby, the strengthening of family ties. Second, the sole expressed precondition to the state's obligation to provide such services to sexually active minors is that such persons voluntarily request family planning assistance. These observations find support in HEW regulations promulgated under Title IV A, as amended. In particular we note that those regulations require participating states to offer and provide family planning services to

those individuals wishing such services, specifically including medical contraceptive services (diagnosis, treatment, supplies, and followup) . . . . *Such services must be available without regard to marital status, age, or parenthood.* Individuals must be assured choice of method and there must be arrangements with varied medical resources so that individuals can be assured choice of source of service. . . . 45 CFR § 220.21. (Emphasis added.)[1]

The 1972 amendments to the Medicaid provisions of the Social Security Act (Title XIX) similarly appear to limit the state's power to impose conditions upon eligibility for family planning assistance. 42 U.S.C. § 1396a(a)(8) requires participating states to provide "medical assistance" to all "eligible individuals." The term "medical assistance" is defined in section 1396d(a)(4)(C) as

payment of part or all of the cost of

\* \* \* \* \* \*

family planning services and supplies furnished . . . to individuals of childbearing age (including minors who can be considered to be sexually active) who are eligible under the State plan and who desire such services and supplies . . . .

Standards of Medicaid eligibility are set forth in section 1396a(a)(10). Part (A) of section 1396a(a)(10) denominates the recipients of various Social Security Act assistance programs as eligible individuals; included are AFDC recipients under Title IV A of the Act. Section 1396a(a)(13)(B) further requires state plans to provide family planning services, as defined by section 1396d(a)(4)(C), to recipients of AFDC benefits, making the provision of other medical

services optional with respect to AFDC recipients.

■ Thus, we read the 1972 Medicaid amendments to establish two preconditions to the state's obligation to provide family planning assistance to sexually active minors. First, such persons must be eligible under the standards of section 1396a(a)(10); second, such persons must voluntarily request assistance.[2] HEW regulations promulgated under Title XIX permit states further to limit family planning services and supplies "to individuals of child-bearing age (including minors who can be considered to be sexually active) who desire such services"; but family planning services must otherwise be "made available to any categorically needy individual included under the plan." 45 CFR § 249.10(a)(6)(vi).

■ Our reading of the 1972 amendments to the Social Security Act leads us to conclude that the challenged Utah regulations, which require parental consent before minors may receive family planning assistance under the AFDC and Medicaid programs, are in conflict with these federal standards. The state's regulations impermissibly engraft upon the federal scheme a condition for eligibility where Congress has undertaken fully to define the class of persons who may receive family planning assistance. The legislative history of the 1972 amendments bears out Congress' concern that AFDC and Medicaid family planning services be provided to sexually active minors who desire them on a confidential basis; in this way Congress has sought to stem the rising number of births out of wedlock and the consequent increase in numbers of welfare recipients.[3] Utah's reg-

---

1. With respect to the purpose behind requiring provision of family planning for appropriate AFDC recipients, 45 CFR § 220.20 provides:

   There must be a program to prevent or reduce the incidence of births out-of-wedlock and to otherwise strengthen family life. Services to prevent and reduce births out-of-wedlock must be extended progressively to all appropriate adults and youths, with initial priority . . . for youths living in conditions immediately conducive to births out-of-wedlock.

2. 45 CFR § 249.10(a)(9) provides that Title XIX plans must ensure, with respect to family planning services,

   that there shall be freedom from coercion or pressure of mind and conscience, and freedom of choice of method, so that such individuals can choose in accordance with the dictates of their consciences.

3. Commenting on section 299E of the Senate bill amending Titles IV A and XIX of the Social Security Act, the Senate Finance Committee reported:

ulations, although undoubtedly motivated by the state's concern for the integrity of the family, nevertheless run afoul of the policies of confidentiality and comprehensive assistance to sexually active minors embodied in the 1972 amendments.

The State of Utah argues, however, that noncompliance with federal family planning assistance standards merely provides grounds for cutbacks in federal funds after review by the Secretary consistent with 42 U.S.C. § 604, but does not provide a basis for injunctive relief against offending state regulations. The Supreme Court rejected this argument in *Rosado v. Wyman*, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442. The Court stated, "We are most reluctant to assume Congress has closed the avenue of effective judicial review to those individuals most directly affected by the administration of its program." *Id.* at 420, 90 S.Ct. at 1222. Although *King v. Smith, supra,* did not specif-

ically advert to the remedial problem, the *Rosado* Court continued, the unarticulated premise of that case was that "the State had alternative choices of assuming the additional cost of paying benefits to families [not eligible under challenged state regulations] or not using federal funds to pay welfare benefits according to a plan that was inconsistent with federal requirements." *Id.* at 420–21, 90 S.Ct. at 1222. In these cases and others the Court has consistently acknowledged the right of recipients of federal assistance to challenge the validity of state restrictions affecting the scope of and conditions placed upon their receiving federal assistance.

The state also argues that HEW's approval of its plan—including its express approval of the challenged regulations—must be considered in determining the validity of the plan under federal standards.[4] We agree. But the principle that accords substantial weight to the interpre-

---

The committee amendment would authorize States to make available on a voluntary and confidential basis family planning counseling, services, and supplies, directly and/or on a contract basis with family planning organizations (such as Planned Parenthood clinics and Neighborhood Health Centers) throughout the State, to present, former, or potential recipients including any eligible medically needy individuals who are of child-bearing age and who desire such services.

\*    \*    \*    \*    \*    \*

The Secretary would be required to work with the States to assure that particular effort is made in the provision of family planning services to minors (and non-minors) who have never had children but who can be considered to be sexually active; for example, persons who have contracted venereal diseases, etc.

\*    \*    \*    \*    \*    \*

Because of the difficulties of enforcing or monitoring the mandatory provision of family planning services to former or potential recipients, the penalty provision will be limited to the offering and provision of services to present adult recipients of AFDC and workfare. However, family planning services must be offered and made available on an optional basis to former and potential recipients of child-bearing age.

It is envisioned that individuals of child-bearing age applying for or receiving AFDC would formally acknowledge that they have been informed that they are eligible to re-

ceive family planning services on a voluntary and confidential basis. If they desire family planning services, an appointment would be set up at that time and a copy of the form would be sent to the clinic or physician providing necessary services and supplies. This would not preclude "walk-in" requests for family planning assistance by present and former recipients or those likely to become recipients in the absence of such services. S.Rep. No. 92–1230, 92d Cong. (1972).

4. In response to an inquiry by defendant Evan E. Jones, Jr., Director of Utah's Division of Family Services, to HEW's Regional Office, Associate Regional Commissioner Ray Myrick, Jr., responded on September 20, 1974 as follows:

Under 45 CFR 220.21 family planning services must be offered and provided to those individuals requesting such services. Such services must be available without regard to marital status, age, or parenthood. However, where State law stipulates a specific age of consent, such services may not be provided any more than any medically related service, without parental consent.

We are unable to find any state law that requires the consent of parents before minors may obtain family planning services or supplies. *See Doe v. Planned Parenthood Ass'n,* 29 Utah 2d 356, 360, 510 P.2d 75, 77 (Tuckett, J., *dissenting*).

tation of a statute by the department entrusted with its administration does not apply where the department's approval is so clearly inconsistent with federal statutory language and legislative policy. *See Townsend v. Swank,* 404 U.S. 282, 286, 92 S.Ct. 502, 30 L.Ed.2d 448. Indeed, it appears that HEW sometimes approves state plans that it concedes to be in conflict with its own regulations, perhaps on the premise that the state departures from federal standards are not substantial enough to justify disapproval by the Secretary. *See, e. g., Carleson v. Remillard,* 406 U.S. 598, 602 & n. 3, 92 S.Ct. 1932, 32 L.Ed.2d 352; *King v. Smith,* 392 U.S. 309, 334–35, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (Douglas, J., *concurring*). We are convinced, however, that the conflict between Utah's parental consent regulations and federal requirements constitutes an important disagreement affecting the scope and effect of federal family planning assistance. Under such circumstances, federal law must control.

### III.

We turn now to plaintiff's claim that Utah's parental consent regulations impermissibly burden her constitutional right to privacy and are for that reason invalid. We proceed by determining first whether the constitutional privacy doctrine prevents the state generally from imposing restrictions upon access to family planning services and contraceptive supplies; second, whether the right to privacy—if inclusive of freedom from state interference in matters of family planning and use of contraceptives—extends to minors; and third, whether the state has shown a compelling interest that justifies its parental consent regulations.

The Supreme Court has never determined whether the constitutional right of privacy developed in *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510, and succeeding cases includes the right to obtain family planning services and materials free from unjustified government interference. In *Eisenstadt v. Baird,* 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349,

the Court expressly refused to decide whether individuals have a right of access to contraceptives. The Court nevertheless stated,

> If the right of privacy means anything, it is the right of the *individual,* married or single, to be free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child. *Id.* at 453, 92 S.Ct. at 1038.

In *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147, in which the Texas criminal abortion statute was held to violate a woman's fundamental right to decide whether she would bear a child, the Court further acknowledged that the same right to privacy "has some extension to activities relating to . . . contraception." *Id.* at 152, 93 S.Ct. at 726. If, as *Roe* teaches, the fourteenth amendment protects a woman's right to decide whether she will terminate her pregnancy, it must also, we believe, protect her right to take measures to guard against pregnancy. In either instance the woman's interest is the same, that is, to make fundamental personal decisions about sexual conduct and procreation free from state interference. We are convinced, therefore, that the right to privacy underlying the Supreme Court's decision in *Roe v. Wade* prevents the state from intruding, without justification, into the decision of adults whether to obtain and use contraceptive devices and whether to seek out counseling in family planning matters.

A more difficult question is whether the right to privacy as we have described it extends to minors such as the plaintiff in the present action. The Supreme Court has consistently recognized as a general principle that the Bill of Rights and the fourteenth amendment protect children as well as adults from unjustified state action. *See, e. g., Breed v. Jones,* 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975); *Tinker v. Des Moines Ind. Community School Dist.,* 393 U.S. 503, 506, 89 S.Ct. 733, 21 L.Ed.2d 731; *In re Gault,* 387 U.S. 1, 13, 87 S.Ct. 1428, 18 L.Ed.2d 527; *Prince v. Massachusetts,* 321 U.S. 158, 165–66, 64

S.Ct. 438, 88 L.Ed. 645. The Court has nevertheless recognized that the state may legitimately curtail the rights of children where it acts to protect children from their own incapacity to fend for themselves. *See Prince v. Massachusetts, supra,* 321 U.S. at 168–70, 64 S.Ct. 438. In the present case, however, the state can assert no such interest in protecting sexually active minors from dangers that may be entailed in the use of contraceptives. The UPPA employs social workers, licensed physicians and other trained personnel to examine and counsel minors seeking contraceptives. These circumstances, we believe, afford adequate protection to minors from physical harms associated with birth control.

More importantly, we perceive no developmental differences between minors and adults that may affect the gravity of the right asserted by sexually active minors to family planning services and materials. The interest of minors in access to contraceptives is one of fundamental importance. The financial, psychological and social problems arising from teenage pregnancy and motherhood argue for our recognition of the right of minors to privacy as being equal to that of adults. This is not to say that the state may not regulate that right in pursuit of some compelling interest of its own; rather, we hold that the fundamental nature of minors' right to privacy must be considered in assessing the constitutionality of state-imposed restrictions on access to contraceptives. In *Doe v. Rampton,* D.Utah, 366 F.Supp. 189, this court implicitly recognized that the constitutional right to privacy extended to minors. There we held that Utah law impermissibly required parental or spousal consent before

minors could receive abortions during the first trimester of pregnancy. Other courts have similarly recognized that the fourteenth amendment guarantees to minors as well as adults the freedom to make basic decisions about sexual conduct and procreation without unjustified interference from the state. *Foe v. Vanderhoof,* D.Col., 389 F.Supp. 947 (Colo.1975); *Coe v. Gerstein,* S.D.Fla., 376 F.Supp. 695; *State v. Koome,* 84 Wash.2d 901, 530 P.2d 260.

With respect to both minors and adults, the right to personal privacy is not absolute but must be considered against important state interests in regulation. *Roe v. Wade, supra,* 410 U.S. at 154, 93 S.Ct. 705. The state may regulate plaintiff's access to contraceptives with measures narrowly drawn to achieve some compelling state interest. *Id.* at 155, 93 S.Ct. 705. The question for us becomes whether Utah's challenged parental consent regulations are supported by any such interest.

The state argues in this respect that it has a "substantial" interest in protecting minor females "from the evil effects and unsuspected harm of actions which go against the mores of society" and in enforcing the right of parents to control the family. For a number of reasons we must hold that neither of these justifications is so compelling as to override the plaintiff's constitutional right to privacy. First, we note that Utah law does not prohibit minors more affluent than plaintiff from obtaining contraceptive materials from their personal physicians even absent parental consent; the challenged regulations, in effect, burden the fundamental rights of indigent minors only.[5] Thus, even if we were to sus-

---

5. Except for the regulations challenged in this action, which apply only to indigent minors seeking family planning services from the UPPA, Utah law does not apparently prohibit or restrict physicians from prescribing contraceptives for minors. The defendants argue that various state statutes must be read as implying that all minors must obtain parental consent before obtaining contraceptive devices. The defendants point primarily to Utah Code Ann. §§ 15–2–1 *et seq.,* which specify the age of majority and provide for rescission of contracts made by minors, and to Utah Code Ann. § 26–6–39.1, which permits treatment of minors for venereal disease without parental consent. These statutes, in our view, cannot be read either to restrict physicians in prescribing contraceptives or to create a legal disability in minors seeking contraceptives. The defendants also note that Utah Code Ann. § 58–19–9 prohibits licensed retailers from selling "prophylactics" to persons eighteen years of age or under. We note that the term "prophylactic" is defined as "[a]ny device, appliance or medi-

tain the state's regulations in their effect upon plaintiff's privacy, they would nevertheless be subject to attack on equal protection grounds. *See Griswold v. Connecticut,* 381 U.S. 479, 485, 85 S.Ct. 1678, 14 L.Ed.2d 510; *Eisenstadt v. Baird,* 405 U.S. 438, 453, 92 S.Ct. 1029, 31 L.Ed.2d 349. More importantly in the present context, the failure of the state legislature to enact restrictions upon the access of minors—rich and poor—to contraceptives seriously undercuts the state's claim that its family planning regulations embody compelling public interests.

■ Second, although parental prerogatives are entitled to considerable legal deference, they frequently must yield to valid interests of the state, for example, in enforcing compulsory education, in regulating child labor, in preventing parental neglect and in providing for the general health. *See Prince v. Massachusetts,* 321 U.S. 158, 166, 64 S.Ct. 438, 88 L.Ed. 645. *See also* Utah Code Ann. §§ 55–16–1 *et seq.* (child abuse), 55–10–77 (parental neglect), 34–22–1 (child labor), 53–24–1 *et seq.* (compulsory education), 26–6–39.1 (treatment of venereal disease). Likewise, we believe that, in appropriate cases, the state's interest in enforcing parental prerogatives must yield to the fundamental rights of minors. *See Rowan v. Post Office Dept.,* 397 U.S. 728, 741, 90 S.Ct. 1484, 25 L.Ed.2d 736. (Brennan, J., *concurring*).

■ To the extent that the plaintiff and her class must consult with a physician before receiving prescription contraceptives and avail themselves of the UPPA's family planning counseling, these youths will be aided by the mature judgment of trained adults before making important decisions regarding sexual conduct. Unlike the abortion decision, a youth's decision to use contraceptives is not irrevocable. Nor does our insistence upon the right to privacy of minors preclude continuing guidance of par-

ents and family in the personal lives of minors. Rather we hold that the state may not enforce the choice of parents in conflict with a minor's constitutional right of free access to birth control information and services. This is not to say, of course, that the state may not require notification to parents or guardians before minors receive such services. *See Roe v. Rampton,* D.Utah, 394 F.Supp. 677 (1975). Such a requirement, however, must be applied nondiscriminatorily to all youths, and not merely those too poor to seek out family planning services on their own.

Accordingly, it is hereby determined that Regulations FPX 120, FPC 120, and 3.7(c) of the Utah State Division of Family Services are unconstitutional and in violation of federal statute insofar as they require consent of a parent or guardian before a minor may obtain family planning services, counseling, and supplies from the UPPA. Enforcement of these regulations must be enjoined.

ALDON J. ANDERSON, District Judge (dissenting).

I have read the foregoing opinion and feel constrained to dissent. A dissenting opinion setting forth the reasons follows.

The majority opinion bases its finding that Regulations FPX 120, FPC 120, and 3.7(c) of the Utah State Division of Family Services are invalid and unconstitutional on two grounds: (1) that the state regulations conflict with the federal statute and are therefore invalid under the supremacy clause of the Constitution, and (2) that the plaintiff has a constitutional right of privacy that has been unjustifiably infringed without a compelling state interest justifying it. Careful examination does not reveal a necessary conflict between the state regulations and federal statutes in question.

cal agent used in the prevention of venereal disease." *Id.* § 58–19–1(f). The statute thus has doubtful application to contraceptive devices used by women. We also observe that § 58–19–2 excepts physicians from the restrictions on sale imposed by § 58–19–9.

In his dissenting opinion in *Doe v. Planned Parenthood Ass'n,* 29 Utah 2d 356, 360, 510 P.2d 75, 77, Justice Tuckett observed that the Utah legislature has never restricted minors from obtaining contraceptives. The court's majority was apparently of the same view. 510 P.2d at 77 n. 6.

Further, the majority's newly defined constitutional right for minors to receive contraceptives without parental consent seems an unwarranted and unwise extension of the right of privacy as well as an unjustified curtailment of the rights of parents.

## SUPREMACY CLAUSE

Whether the state regulations impermissibly conflict with the federal statutes in question is a matter of statutory construction. Basic rules of statutory construction require that statutes and regulations be given a sensible interpretation that will accomplish the legislative intent and avoid an illogical conclusion or unreasonable result. Where possible, statutes and regulations should be upheld and operative language be given effect. It is believed the interpretation herein contended for conforms to those standards and that there is no conflict between the regulations and statutes in question.

In its consideration of the statutes and regulations in question, the majority has overlooked pertinent words in the federal statutes and relevant federal regulations which allow a harmonious construction with the state regulations. The two federal statutes in question are 42 U.S.C. § 602(a)(15) and 42 U.S.C. § 1396d(a)(4)(C). Plaintiff argues these statutes mandate that family planning services be given to her. Both statutes, however, contain words of qualification which can be interpreted as giving some definitional leeway in determining who should receive family planning services. 42 U.S.C. § 602(a)(15) provides in part:

(a) A State plan for aid and services to needy families with children must:

\*    \*    \*    \*    \*    \*

(15) . . . [provide a program] for preventing or reducing the incidence of births out of wedlock and otherwise strengthening family life, and for implementing such program by assuring that *in all appropriate cases* (including minors who can be considered to be sexually active) family planning services are offered to them and are provided promptly (directly and under arrangements with others) to all individuals voluntarily requesting such services. (Emphasis added.)

42 U.S.C. § 1396d(a)(4)(C) defines "medical assistance" to mean payment of part or all of the costs of

family planning services and supplies furnished . . . to individuals of childbearing age (including minors who can be considered to be sexually active) *who are eligible under the State plan* and who desire such services and supplies (Emphasis added.)

In 42 U.S.C. § 1396d(a)(4)(C) the discretion of the state is clearly recognized as eligibility under the state plan is set out as a condition to payment of part or all of the cost of medical assistance as therein defined. The phrase "in all appropriate cases" in 42 U.S.C. § 602(a)(15) also is indicative of state discretion in defining program eligibility when read in light of the federal statutes promulgated thereunder. The federal regulation applicable to § 602(a)(15) provides that a state plan can qualify the families and children who may receive mandatory family planning services. 45 C.F.R. § 220.15 (1974) states:

The State plan:

(a) Must assure that responsibility is assumed *for the provision of services to all appropriate persons receiving aid* and others in the homes whose needs were considered in determining eligibility for such aid, as called for under each of the requirements in §§ 220.16–220.25; and (b) *Must be specific in its identification of the services to be provided or purchased and the families and children to whom they will be available.* (Emphasis added.)

Further, as it relates to the parental consent requirement in the Utah service plan, 45 C.F.R. § 220.16(c) provides that the *family* (not merely a minor child within a family) shall have the right to accept or reject particular state plans. It states:

Such plans must be developed in cooperation with the family and must be responsive to the needs of each individual with-

in the family, while taking account of the relation of individual needs to the functioning of the family as a whole. *Families shall have the right to* accept or reject such plans. (Emphasis added.)

Further support of the philosophy of voluntariness and the right of the family to elect whether or not to participate in family planning services is seen in 45 C.F.R. § 220.-21 which states in part:

Acceptance of any [family planning] services must be voluntary on the part of the individual and may not be a prerequisite or impediment to eligibility for the receipt of any other service of aid under the plan.

Thus, federal regulation 45 C.F.R. § 220.-15 makes it clear that the states do have leeway to identify "the families and children" to whom family planning services will be available, and 45 C.F.R. § 220.16(c) makes it equally clear that *families* have the right to reject such plans. The mandatory aspect of these services appears to be that the families involved are made aware of the availability of the services and that the services be provided if requested. Congress's use of the qualifying language in terms of the "appropriate cases" along with the aforementioned federal regulations does not provide a language base for concluding that the decision of whether or not to acquire and use family planning services is to be left entirely to unmarried minor children in families receiving AFDC aid. Consistent with 45 C.F.R. § 220.16(c), the Utah plan provides family planning services to unmarried minor children with parental consent.

Contrary to the foregoing, the plaintiff, in sum, contends that the statutory language in question merely correlates particular services provided for by the Social Security Act between one group of persons for which the services are mandated and a second group of persons, that plaintiff claims is identified under the Act, who can receive some of the services available to the first group depending upon the peculiarities of the state plan involved. This complex explanation (which is not entirely clear as explained in plaintiff's brief) does not ade-

quately explain the statutory language in question. Plaintiff puts a strained interpretation on words not carrying the plain signification claimed for them. Two strong arguments can be made against plaintiff's proposed construction of the statutes. (1) If the word "appropriate" and the phrase "who are eligible under the State plan" were stricken from the respective statutes, no change would be effected. The persons in the second categories, as identified by plaintiff, could still receive all the services for which they qualify even without these words in the statutes. Statutes should be construed in order that each word can be given effect rather than in a manner in which certain words are rendered meaningless. (2) If "appropriate" and "who are eligible under the State plan" were meant to qualify services that might be provided to the persons in the second category, as identified by plaintiff, it would seem that such qualifying words would appear throughout the statute in order to qualify each of the services that could be, under the appropriate circumstances, provided to both groups of persons. However, these qualifying words appear only in connection with the family planning services, rather than in connection with all the various services that can be provided to both groups of persons. Further, with the evidence of precision in the use of words in the extensive and complicated statutes before the court, such phrases with the meaning ascribed to them by plaintiff would seem to be inartful. Reason would require the conclusion that the construction urged by plaintiff was not intended.

The word "appropriate" and the phrase "who are eligible under the State plan" are most logically construed as allowing Utah to exercise discretion in identifying those minors with parental consent as the only minors in the state to whom family planning services will be available. This is in accordance with 45 C.F.R. § 220.15 which provides that in assuming responsibility for the provision of services under the Act that the state plan must "be specific in its identification of . . . the families and children to whom they [the services] will be

available," and with 45 C.F.R. § 220.16(c) which provides that families shall have the right to accept or reject particular state plans. Such an interpretation is consistent with the overall objectives of the Act as stated in 42 U.S.C. § 601 which provides that the appropriations were authorized for the purposes of encouraging the care of dependent children in their own homes and for the purpose of helping to

> maintain and strengthen family life and to help such parents or relatives to attain or retain capability for the maximum self-support and personal independence consistent with *the maintenance of continuing parental care and protection* . . . . (Emphasis added.)

Also, persuasive support for a construction upholding the Utah regulations is the interpretation of the Utah plan by the federal agency charged with the execution of the programs here under consideration. With all their administrative experience in sponsoring and enforcing such laws and regulations, the Department of Health, Education and Welfare, through its Regional Officer, approved Utah's plan with its parental consent requirement.[1]

The Utah regulations can be held invalid under the supremacy clause of the Constitution only if they impermissibly conflict with federal law. There is no conflict in this case. The federal law anticipates a state program in which the needs of children are met with continuing parental care and protection and families are strengthened. The government offers the panoply of what it believes are essential services. The family determines which services it will use. 45 C.F.R. § 220.16(c). Under the federal plan, parents are afforded the flexibility to raise their families without the interference of an impersonal government that would, in the words of the majority, substitute the "mature judgment" of trained adults (presumably social workers) for parents. Whose judgment will determine that a par-

ticular social worker, perhaps a parent with his own problems, will better advise a minor on the use of contraceptives than the minor's parents? By what right may a social worker supplant the parent under the basic purposes of the Act? The construction contended for by plaintiff in this important aspect of child care and training would not strengthen the family nor would it "maintain continuing parental care and protection," as contemplated by the Act.

## THE RIGHT OF PRIVACY

The legislative solution for preventing or reducing the incidence of births out of wedlock among sexually active minors who are AFDC recipients is presented in the statutes previously discussed herein and argued at length by plaintiff. In discussing plaintiff's asserted constitutional right of privacy, which is the majority's second ground for invalidating the Utah regulations in question, it should be borne in mind that a critical distinction exists between (1) the desire of Congress to provide contraceptives to minors if it perceives such a need and (2) a minor's "right" to receive contraceptives under constitutional principles. A minor's need for contraceptives may be susceptible to legislative action, while a minor's right of access to contraceptives is certainly governed by different considerations—the constitutional status of the right of privacy for minors in this context.

## RIGHT OF PRIVACY

The constitutional right of access to contraceptives for adults, to the extent it presently exists, has evolved under the court-created right of privacy. *See* Note, *Parental Consent Requirements and Privacy Rights of Minors: The Contraceptive Controversy,* 88 Harv.L.Rev. 1001, 1006 (1975). In *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) the Court left open the possibility that a state might validly regulate distribution rather than use of contraceptives. No Supreme Court deci-

---

1. In addition, as noted by the majority opinion, the Utah Supreme Court also upheld the state plan in *Doe v. Planned Parenthood Association of Utah,* 29 Utah 2d 356, 510 P.2d 75 (1973), appeal dismissed, 414 U.S. 805, 94 S.Ct. 138, 38 L.Ed.2d 42 (1973), against an attack based on ninth amendment and equal protection arguments.

sion has held that minors have a fundamental right to contraceptives, and no Supreme Court decision has explicitly held that this claimed right of privacy is even applicable to minors. 88 Harv.L.Rev. at 1009. In this case, however, the majority has held that the right to privacy prevents the state from intruding, without justification, into the decision of the minor to obtain and use contraceptives; that the interest of minors in access to contraceptives is one of fundamental importance; that Utah's parental consent regulations are not supported by a compelling state interest, and therefore are constitutionally invalid. The extrapolation which leads the majority to these conclusions ignores significant familial interests which have been fundamentally at the root of our society.

Justice Oliver Wendell Holmes wrote that "[t]he life of the law has not been logic: it has been experience." [2] While the *Griswold* case has been argued by some as a logical base for holding that a right of privacy gives a minor a fundamental right to contraceptives, such a conclusion is not supported by experience, nor on close examination does logic support this argument even within the majority's own conceptual framework.

Although never explicitly determined by the Supreme Court, many have concluded from recent right of privacy decisions that the right of privacy does comprehend the right of adults to obtain contraceptives and other birth control information free from unnecessary state interference.[3] While the rights of adults are not specifically at issue in this case, a conclusion of their right to contraceptives is a requisite step in the logical consideration of minors' rights. The majority thus concludes on the proposition that there exists a fundamental right of access to family planning information and material lodged in adults under the constitutional rubric of the right of privacy.

The next step of the majority's analysis is the conclusion that this privacy right of access to contraceptive materials extends to minors. As to this conclusion, basic principles require disagreement. By long-standing and significant precedent it is clear that constitutional guarantees found in the Bill of Rights and the clauses of the Fourteenth Amendment operate to the protection of minors as well as adults. *See, e. g., In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). And it is also an established principle that fundamental constitutional rights accorded adults may be limited in their extension to minors, particularly when capacity is at issue.[4] *See Ginsberg v. New York,* 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968), *reh. den.,* 391 U.S. 971, 88 S.Ct. 2029, 20 L.Ed.2d 887 (although written in constitutional language, that decision is not explicitly premised on the First Amendment rights of minors); *Oregon v. Mitchell,* 400 U.S. 112, 119–31, 91 S.Ct. 260, 27 L.Ed.2d 272 (1970).

The majority properly recognizes that "capacity" is the distinguishing feature in understanding the different approaches utilized by the Supreme Court in extending constitutional rights to minors. It states that

[t]he Court has nevertheless recognized that the state may legitimately curtail the rights of children where it acts to protect children from their own *incapacity to fend for themselves.* (Emphasis added.) *Supra* at 425–881.

Thus, where capacity of the minor child is not an issue in the exercise of a particular fundamental right, the Court has applied constitutional protections for minors with substantially identical force. *See Tinker v. Des Moines Ind. Com. School Dist.,* 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969) (First Amendment rights of students to

---

**2.** O. W. Holmes, The Common Law 1 (1881).

**3.** *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); *Eisenstadt v. Baird,* 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d

349 (1972); *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973).

**4.** The majority is in agreement with this view. Supra at 880.

wear anti-Viet Nam war armbands to school upheld); *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) and *Breed v. Jones,* 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975) (both extending criminal process rights to minors); *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) (procedural rights guaranteed prior to suspension from public high school). However, other "fundamental" rights have not been identically applied to minors when capacity is at issue. Thus, the right to vote, deemed fundamental, is not accorded to minors though a substantial number of minors undoubtedly have the capacity to exercise that right with superior ability in comparison to many adults. *See Oregon v. Mitchell,* 400 U.S. 112, 119–31, 91 S.Ct. 260, 27 L.Ed.2d 272 (1970) (denying right to vote to 18 year olds in state elections). Minors are also denied rights of access to allegedly pornographic materials which some court decisions have allowed adults under the First Amendment. *See Rowan v. United States Post Office Dept.,* 397 U.S. 728, 738, 90 S.Ct. 1484, 25 L.Ed.2d 736 (1970) (parent may reject mailed material being sent to minor members of family);[5] *Ginsberg v. New York, supra* (standards of obscenity different for minors). The underlying though not explicit premise of these cases is that where capacity is an issue, i. e., that the judgment required in the exercise of the right is such that a substantial number of the class of minors involved lack the mental and emotional capacity to effectively make that judgment, the state may limit in a number of ways the exercise of those rights by minors. And, similarly, when capacity is not at issue in the exercise or

entitlement of rights, such as criminal process or due process rights, there is then no justification for state limitation or infringement of those rights.

It is not, however, with the significance of "capacity" that gives so much concern, but with the majority's definition. After noting the constitutionally permissible limitations which states may impose to protect minors "from their own incapacity to fend for themselves," the majority opinion goes on to state that

> [i]n the present case, however, the state can assert no such interest in protecting sexually active minors from dangers that may be entailed in the use of contraceptives.

*Supra* at 881.

Thus, it appears that the majority equates "capacity to fend for oneself" with "sexual activity," and holds that any sexually active minor has the capacity to make the contraceptive decision. Such an equation seems oblivious to the precedential and linguistic meaning of "capacity" and of the traditional protection of minors afforded by state law. It can hardly be contested that a minor's decision to use contraceptives involves intellectual, emotional, and moral factors as well as the physical factor. Nonetheless, the majority, disregarding these other factors, has limited their observation in this respect to the risk of "physical harms" resulting from the practice of birth control. Consequently, the conclusion that the state can assert no interest in protecting sexually active minors from the use of contraceptives, because they have capacity, seems based on a false assumption.[6]

---

5. The majority cites Justice Brennan's concurring opinion in *Rowan* for the proposition that parental prerogatives "must yield to the fundamental rights of minors." However, the language of the Court, while admittedly terse because of "no particularized attack" on that provision, indicates that a householder need not "risk that offensive material come into the hands of his children before it can be stopped." 397 U.S. at 738, 90 S.Ct. at 1491. Thus, *Rowan* stands as precedent, though somewhat tenuously so, for the proposition of the diminished rights of minors in families where capacity is at

issue, notwithstanding Justice Brennan's concurrence.

6. As noted earlier, there is a distinction between the *needs* of some minors for family planning materials and the *rights* of some minors to those materials. The majority's emphasis on preventing physical harms addresses the needs of some minors so endangered. However, the right, if any, of minors to those materials is based on capacity, of which need is not a function. Thus, the majority's reference to sexually active minors as those whose interests cannot be infringed is a legislative conclu-

Since capacity is at issue here, and requires consideration of more than the level of a particular minor's sexual activity or ability, it remains to determine what applicability the right of privacy has for minors claiming family planning assistance. One possible analytical approach is to define the two groups of minors whose interests appear to be raised by limitations on contraceptive access, whether by parental consent requirements or otherwise. The first group are those minors with the capacity to make the contraceptive decision who would choose to obtain family planning materials, referred to as those "with capacity." The second group are those minors clearly lacking the capacity to effectively make the contraceptive decision who would choose also to obtain family planning materials to their injury, referred to as those "lacking capacity." The former arguably suffer the possible deprivation of a constitutional right; the latter suffer the possible consequences of an erroneous decision. It is in the light of these competing interests that the claimed right of minors to contraceptives must be evaluated. First, the interests of those two groups must be defined and weighed, if possible, i. e., whether the interest of the first group, those with capacity, is of significantly larger dimensions than that of the latter group to warrant denominating the right to contraceptives as fundamental for all minors. It is clear that no such conclusion can be drawn in the absence of supporting empirical evidence of plaintiff's position and without a more persuasive logical position on the face of the arguments themselves. Thus, as in cases such as *Oregon v. Mitchell* and *Ginsberg,* the presence of a critical capacity issue precludes extending this right of access to contraceptives, as a fundamental right, to all minors. And the relative interests of those

minors with capacity cannot of their own weight and constitutional substance bootstrap the right for all minors, in light of the competing interests and claims discussed above. Therefore, the right of privacy, insofar as it may include the right of unhindered access to contraceptives for adults, does not extend to minors as a fundamental right.

This conclusion is in accord with the analogy to the legislative decision, in the area of voting rights, to deny *in toto* the right of minors to vote, which has been sustained by the Supreme Court, notwithstanding the strong argument of the existence of a substantial number of minors with capacity. *See Oregon v. Mitchell, supra.* Consequently, given the conclusion that the right of minors to family planning assistance is not a fundamental one, the traditional approach of courts is to see if there is a reasonable basis for such a statutory limitation. *See San Antonio Independent School Dist. v. Rodriguez,* 411 U.S. 1, 40–59, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973); *Developments in the Law—Equal Protection,* 82 Harv.L.Rev. 1065, 1077–87 (1969). In light of the very strong societal interest in protecting minors lacking capacity from the potential injuries resulting from erroneous decisions,[7] the parental consent requirement invoking the guidance and judgment of parents has such a reasonable basis.

The parental consent requirement also recognizes the traditional role of the family in society.

The well-being of its children is of course a subject within the State's constitutional power to regulate, and, in our view, two interests justify the limitations . . . upon the availability of sex material to minors under 17. . . . *First of all, constitutional interpretation has consist-*

---

sion, since it responds to needs, rather than a judicial one, which would respond only to the rights involved. The right of privacy claimed here does not give occasion to consider the needs of minors in its calculation.

**7.** Although difficult to quantify, it seems a safe assumption that injuries of various kinds and severity might occur to a minor who makes a

personally incorrect decision to use contraceptives. The emotional and moral context of that decision, and the increased sexual activity which is likely to occur in some cases, may be taken to have a potential for serious damage for some minors. Such an assumption can, for this case, be noted and given weight without a precise calculation of its parameters.

*ently recognized that the parents' claim to authority in their own household to direct the rearing of their children is basic in the structure of our society. 'It is cardinal with us that the custody, care and nurture of the child reside first in the parents,* whose primary function and freedom include the preparation for obligations the state can neither supply nor hinder.' *Prince v. Commonwealth of Massachusetts, supra* [321 U.S.], at 166, 64 S.Ct. [438] at 442. The legislature could properly conclude that parents and others, teachers for example, who have this primary responsibility for children's well-being are entitled to the support of laws designed to aid discharge of that responsibility. . . . Moreover, the prohibition against sales to minors does not bar parents who so desire from purchasing the magazines for their children. *Ginsberg v. New York, supra,* 390 U.S. at 639, 88 S.Ct. at 1280. (Emphasis added.)

It seems incongruous to assign to parents the role of instruction, on matters of morality and citizenship as well as other areas, and then deprive them of that role in the instance of opting to use contraceptives. Consequently, the parental consent requirement does not unconstitutionally infringe the rights of those minors with capacity, while reflecting substantial interests which persuasively weigh in its favor over a state counselor approach even assuming the "mature judgment" spoken of in the majority opinion.

## EQUAL PROTECTION

The majority opinion also notes that "even if we were to sustain the state's regulation in their effect upon plaintiff's privacy, they would nevertheless be subject to attack on equal protection grounds" because there is no state law prohibiting distribution of contraceptives to all minors. This argument, while not relied upon by the majority nor elaborated in any detail, appears to be based on the assumption that family planning assistance is denied to the poor while available to the affluent. Under that assumption, such a statutory scheme would be subject to two challenges. The first is based on wealth discrimination. However, the Supreme Court has recently ruled that wealth is not a suspect classification. *See San Antonio Independent School Dist. v. Rodriguez, supra,* 411 U.S. at 18–28, 93 S.Ct. 1278. Thus, only a reasonable basis need be found for the apparent distinctive treatment embodied in the state plan. The second challenge is that an important right (whether or not deemed fundamental) is denied to some while granted to others with no apparent justification. The problem with that argument is that those in plaintiff's position who come under the various federal programs here involved are not denied access to contraceptives. Rather, they are only denied family planning materials through the particular program for which the state plan was adopted where the parents do not consent. It remains for those in plaintiff's position to obtain contraceptive material and information from the same sources as "affluent" minors, if state law so allows. Thus, the only challenge is the wealth discrimination challenge. And it is a reasonable basis for such a state plan that the state choose not to be involved in the distribution of contraceptive materials to minors. State statutes condemn sexual relations with minors. See e. g., Utah Code Ann. § 76–53–19 (1953) (a felony to have carnal knowledge of a minor). Further, a common factual predicate for a determination of a "delinquent child" or contributing to the delinquency of a minor, is unlawful sexual activity. Thus, an equal protection challenge to the state's plan requiring parental consent fails as well.

As quoted above by the United States Supreme Court in *Ginsberg v. New York, supra,* 390 U.S. at 639, 88 S.Ct. at 1280.

Constitutional interpretation has consistently recognized that the parents' claim to authority in their own household to direct the rearing of their children is basic in the structure of our society. "It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder."

It is believed that the regulation of the state which requires parental consent in this important area of moral training is justified under the law. I, therefore, feel constrained to dissent.