810 F.2d 984
 16 Soc.Sec.Rep.Ser. 234, Medicare&Medicaid Gu 36,040
PLANNED PARENTHOOD ASSOCIATION OF UTAH, Plaintiff-Appellee,
v.
Suzanne DANDOY, M.D., Executive Director, Utah State
Department of Health, in her official capacity,
Defendant-Appellant.
 No. 86-1880.
 United States Court of Appeals,
Tenth Circuit.
 Feb. 5, 1987.
 
 Clark C. Graves, Asst. Atty. Gen. (David L. Wilkinson, Atty. Gen., with him on brief), Logan, Utah, for defendant-appellant.
 Wayne McCormack, Salt Lake City, Utah (Jeffrey R. Oritt of Tibbals, Howell, Jones & Moxley, Salt Lake City, Utah, Rachael Pine, Janet Benshoof and Lynn Paltrow of the American Civil Liberties Union Foundation, New York City, with him on brief), for plaintiff-appellee.
 Before MOORE, SETH and TACHA, Circuit Judges.
 PER CURIAM.
 
 
 1
 This appeal concerns the expenditure of state and federal funds in the operation of the Medicaid health care program (Title XIX of the Social Security Act, 42 U.S.C. Sec. 1396 et seq.) in the State of Utah. The defendant is the state official who administers this federally subsidized plan in which Utah has chosen to participate and for which the state provides a percentage of the funds. It is, of course, a broad program to provide basic medical help to persons who are unable to pay for such services. Title XIX provides that a "single state agency" shall administer the Medicaid program in the particular state. In this instance it is the Utah Department of Health under the direction of the defendant.
 
 
 2
 As mentioned, Medicaid provides a wide range of health services. This appeal however concerns only family planning services for minors who do not have written parental consent to receive services. Title XIX provides that such services and supplies shall include (42 U.S.C. Sec. 1396d(a)(4)(C)):
 
 
 3
 "family planning services and supplies furnished (directly or under arrangements with others) to individuals of child-bearing age (including minors who can be considered to be sexually active) who are eligible under the State plan and who desire such services and supplies."
 
 
 4
 The defendant does not challenge the fact that family planning for sexually active minors of childbearing age is a "required Medicaid feature." The defendant asserts however that state law prohibits the use of state funds for such purposes unless parental consent is provided.
 
 
 5
 The plaintiff, Planned Parenthood of Utah, a nonprofit organization, is a certified Medicaid provider. It gives family planning advice, services and supplies including contraceptives to Medicaid qualified persons including unmarried minors who do not provide evidence of parental consent. Plaintiff, as a Medicaid provider, submitted to defendant applications for reimbursement for its services to minors. These were refused for the reason that no written parental consent was attached.
 
 
 6
 The plaintiff brought this action after the refusal by defendant to make reimbursements for the stated reason. This was a reason described in a bulletin previously issued. More importantly or basically her refusal was also based on a Utah statute, known as Senate Bill 3, passed in 1981, which in substance prohibits the use of state funds for contraceptive services to unmarried minors without parental consent. Plaintiff sought injunctive relief to prevent future refusals to reimburse for such services to minors despite the absence of parental consent.
 
 
 7
 Cross motions for summary judgment were filed. The trial court denied defendant's motion and entered judgment in favor of plaintiff for injunctive relief.
 
 
 8
 We are here concerned with this injunction granted against the defendant in her official position and directed to her future administration of the Medicaid program in Utah. Since the wording of the injunction ordered by the trial court is also an issue it is quoted in part as follows:
 
 
 9
 "IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:
 
 
 10
 "1. Plaintiff's Motion for Summary Judgment is granted, and defendant's Motion for Summary Judgment is denied.
 
 
 11
 "2. Dr. Suzanne Dandoy, Executive Director of the Utah State Department of Health, and her successors in that office, are hereby permanently enjoined from observing or acting in accordance with the Utah law known as Senate Bill 3 to the extent that it conflicts with Title XIX of the Social Security Act, so long as the State Medicaid agency continues to receive federal assistance under Title XIX of the Social Security Act. In furtherance thereof, and henceforth, defendant must reimburse all licensed Utah Medicaid providers, certified by defendant, who provide family planning services and contraceptives after the date of this judgment to eligible unmarried minor Medicaid recipients under the Utah Medicaid Program and who submit claims for those services to defendant, for so long as the Utah Medicaid agency takes federal matching funds under Title XIX of the Social Security Act."
 
 
 12
 The trial judge in granting this injunctive relief followed the three judge decision in T___ H___ v. Jones, 425 F.Supp. 873 (D.Utah), which was affirmed by the Supreme Court without opinion on statutory grounds at 425 U.S. 986, 96 S.Ct. 2195, 48 L.Ed.2d 811. In our view, that opinion with the decision in Jane Does 1-4 v. State of Utah Dept. of Health, 776 F.2d 253 (10th Cir.), answers the basic arguments of the defendant. There would seem to be no need to review the arguments nor discuss the opinions.
 
 
 13
 The defendant here urges that the requirement for parental consent is now in statutory form, Utah Code Ann. Sec. 76-7-322 (Supp.1985), when it had heretofore been in a regulation, and this should lead to a different result. We find no reliance on the form in the previous cases and no persuasive reason has been advanced why the change in form should lead to a different result. The impact on those receiving the services, on the providers, and on the administration of the Act is the same. In whatever form it represents the official position of the defendant and of the state.
 
 
 14
 The defendant urges that Utah has a general parental statute which is of significance in this case. However, we agree with the trial court that Utah has no such general parental consent law and that its Health Care Malpractice Act cannot be construed to be such a law as urged by defendant. The Act was enacted after the Decision in T___ H___ v. Jones and it refers to damage actions in the event any health care provider does not obtain informed consent for treatment involving significant risk. (Utah Code Ann. Sec. 78-14-5(1)(d).) The Act is directed to malpractice claims and to nothing else. Reference is made in the Act to parental consent but only in the context of malpractice actions.
 
 
 15
 Since the several basic arguments advanced by the defendant have been rejected by this and other courts, the defendant places emphasis on the remedy. She urges that the nature of the remedy or the injunctive order itself is defective.
 
 
 16
 The relief here ordered by the trial court is essentially the same as in Jane Does 1-4 wherein the Title X grant was specifically for family planning. Utah had accepted the grant but it refused planning services to minors without parental consent. The injunction there banned the receipt of the grant by the state so long as it continued parental consent requirements contrary to federal statutes.
 
 
 17
 In the case before us, the trial court enjoined the future refusal by the state to reimburse providers for planning services to minors in the absence of proof of parental consent. Thus the state must make the reimbursements required by federal law so long as it participates in the Medicaid program.
 
 
 18
 We see no substantial difference between the Jane Does 1-4 remedy and the remedy here concerned other than what is necessary to accommodate the difference between Title X and Title XIX. Here only the state can administer the program and under the injunction the program continues despite Senate Bill 3 unless Utah decides to give up the federal funds. This is in accord with King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118. As here King concerned a particular part of a large program impacted by a particular state policy. The Court there approved an injunctive remedy ordering that payments to individuals be made of the AFDC funds.
 
 
 19
 In Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442, the Court enjoined the receipt of funds by the state unless the defect was corrected. The Court there said in part, at 421, 90 S.Ct. at 1222:
 
 
 20
 "The prayer in the District Court in Smith v. King, as in the case before us, was for declaratory and injunctive relief against the enforcement of the invalid provision. 277 F.Supp. 31 (D.C.M.D.Ala.1967). We see no justification in principle for drawing a distinction between invalidating a single nonconforming provision or an entire program."
 
 
 21
 See also the discussion of remedies in Pennhurst State School v. Halderman, 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694. The remedy adopted by the trial court and relating only to future reimbursements was correct. The injunction, of course, does not prevent the state from an application of Senate Bill 3 to expenditures of its own funds in purely state health programs.
 
 
 22
 The defendant argues that this is a "scope of service" case or issue. We cannot agree. The defendant provides the services to some persons eligible under Title XIX but not to others. The defendant thus has excluded some persons from the general group who are eligible for the particular health care here concerned. The result is that care to designated individuals in this large group to whom health care is to be available is refused by the state imposed condition. This is the added "eligibility" requirement referred to in T___ H___ v. Jones, 425 F.Supp. 873 (D.Utah), Jane Does 1-4 v. State of Utah Dept. of Health, 776 F.2d 253 (10th Cir.), and other cases. Some reference should be made to the terminology used in the several cases referred to above. Senate Bill 3, as indicated in Jane Does 1-4 v. State of Utah Dept. of Health, 776 F.2d 253 (10th Cir.), as applied by defendant in the Title X context was an attempt to add to the federal statute a separate and different requirement. The consequences were not there described as a preemption by the federal act, but the addition by the state was in conflict with the federal statute and was invalid. See also King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118. The three judge court in T___ H___ v. Jones, 425 F.Supp. 873 (D.Utah), reached the same conclusion as to the regulation there concerned and referred to the state's attempt to "impermissibly graft" eligibility requirements as a condition in conflict with the Social Security Act. See also Planned Parenthood v. Matheson, 582 F.Supp. 1001 (D.Utah).
 
 
 23
 The same consequences follow defendant's application of Senate Bill 3 here. It would not seem to be of any consequence whether this is described as "preemption" in the sense used in the traditional doctrine (Hisquierdo v. Hisquierdo, 439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1), or as an application of the Supremacy Clause to the administration of state-federal programs derived from the voluntary nature of state participation in the programs. The latter is a more realistic treatment of the state-federal relationship created by these programs. The Supreme Court in King v. Smith, 392 U.S. 309, 333, n. 34, 88 S.Ct. 2128, 2141, n. 34, 20 L.Ed.2d 1118, made the following observation:
 
 
 24
 "There is of course no question that the Federal Government, unless barred by some controlling constitutional prohibition, may impose the terms and conditions upon which its money allotments to the States shall be disbursed, and that any state law or regulation inconsistent with such federal terms and conditions is to that extent invalid. See Ivanhoe Irrigation District v. McCracken, 357 U.S. 275, 295 [78 S.Ct. 1174, 1185, 2 L.Ed.2d 1313] (1958); Oklahoma v. Civil Service Comm'n, 330 U.S. 127, 143 [67 S.Ct. 544, 553, 91 L.Ed. 794] (1947)."
 
 
 25
 Utah may participate in the program and thereby accept the conditions attached by the federal acts which may be contrary to state law or unwanted or instead choose not to participate and to use its own funds as it wishes. If the choice is to participate, there is thereby accepted a limitation or restriction on state statutes or regulations which conflict with the federal statutes. This has consequences similar to the traditional preemption doctrine but as mentioned they come about by a choice made by the state.
 
 
 26
 Utah has itself chosen by its participation to forgo whatever policy the conflicting state statute or regulation sought to accomplish. See Planned Parenthood v. Heckler, 712 F.2d 650 (D.C.Cir.). This can be characterized as a "voluntary relinquishment" although obviously the availability of federal funds to accomplish the same specific purposes, although in a somewhat different way, is a rather large carrot.
 
 
 27
 AFFIRMED.