**PLANNED PARENTHOOD AFFILIATES OF MICHIGAN; Planned Parenthood of South Central Michigan; Planned Parenthood of Mid–Michigan, on behalf of themselves and the Medicaid-eligible women of the State of Michigan to whom they provide health care, Plaintiffs–Appellees,**

**Summit Medical Center; Michiana Abortion Clinic, P.C.; and Northland Family Planning Clinic, Inc., on behalf of themselves, Janet Jackson (pseudonym), and all similarly situated Medicaid-eligible women in the State of Michigan, Plaintiffs–Appellees/Cross–Appellants,**

v.

**John ENGLER, Governor of the State of Michigan, in his official capacity; Gerald Miller, Director of the Michigan Department of Social Services, in his official capacity; Vernon K. Smith, Director of the Michigan Medical Services Administration, Defendants–Appellants/Cross–Appellees,**

**Frank J. Kelly, Attorney General, Defendant–Appellee.**

Nos. 94–1913, 94–2097.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 13, 1995.

Decided Jan. 16, 1996.

Roger K. Evans (briefed), Planned Parenthood Federation of America, Inc., New York City, Lore A. Rogers, Ann Arbor, MI, for Planned Parenthood Affiliates of Michigan, Planned Parenthood of South Central Michigan, Planned Parenthood of Mid-Michigan.

Eve C. Gartner, (argued and briefed), Center for Reproductive Law & Policy, New York City, for Summit Medical Center, Michiana Abortion Clinic, P.C., Northland Family Planning Clinic, Inc. in No. 94-1913.

Eve C. Gartner, Center for Reproductive Law & Policy, New York City, Donna J. Innes, Kalamazoo, MI, for Summit Medical Center, Michiana Abortion Clinic, P.C., Northland Family Planning Clinic, Inc., in No. 94-2097.

Thomas R. Wheeker (argued and briefed), Office of the Attorney General, Tort Defense Division, Lansing, MI, for Defendants-Appellants/Cross-Appellees.

Paul Benjamin Linton (briefed), Chicago, IL, for Amicus Curiae Members of the Michigan Legislature.

Before: MERRITT, Chief Judge; DAUGHTREY and OAKES,* Circuit Judges.

## PRELIMINARY STATEMENT

OAKES, Circuit Judge.

These consolidated cases involve the validity of Section 109a of the Social Welfare Act of Michigan, Mich.Comp.Laws Ann. § 400.109a (West 1994 supp.) ("Section 109a"), which prohibits the expenditure of state funds to pay for an abortion for a welfare recipient unless the abortion is necessary to save the life of the mother. The court for the Western District of Michigan, Judge Benjamin F. Gibson, found that Section 109a conflicted with the Medicaid Act, Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 *et seq.*, as modified by the 1994 Hyde Amendment, Pub.L. No. 103–112, § 509, 107 Stat. 1082–1113 (1993), which provides federal Medicaid funding for abortions necessary to save the life of the mother and for abortions of pregnancies resulting from rape or incest. The court entered an order enjoining Michigan, for so long as Michigan continues to accept federal Medicaid funds, from enforcing Section 109a "insofar as it prohibits state funding for abortions to terminate pregnancies resulting from acts of rape or incest."

The Appellants contend that the court erred in finding that Section 109a conflicts with federal law. They claim that the 1994 Hyde Amendment does not modify the Medicaid Act. Appellee Summit Medical Center has cross-appealed, claiming that the court should have enjoined the statute in its entirety, rather than modifying the statute to conform with the Hyde Amendment.

* The Honorable James L. Oakes, Circuit Judge of the United States Court of Appeals for the Second Circuit, sitting by designation.

We order that the injunction be modified. In all other respects, we affirm the district court.

## BACKGROUND

■ Medicaid, Title XIX of the Social Security Act, 42 U.S.C. §§ 1396, *et seq.,* is a federal-state cooperative program designed to provide health care to the indigent. Although state participation in Medicaid is purely voluntary, a state participating receives federal funds and must comply with the requirements of the program. Under Medicaid, certain categories of medical care are mandatory and therefore must be provided by participating states when a physician certifies that the care is medically necessary to the patient. *See* 42 U.S.C. § 1396a(a)(10)(A) (1988). The mandatory categories of care include:

> (1) inpatient hospital services ...; (2)(A) outpatient hospital services ...; (3) other laboratory and X-ray services; (4)(A) nursing facility services....; (B) ... early and periodic screening and diagnosis ... for individuals ... under the age of 21; (C) family planning services ... (5)(A) physicians' services furnished by a physician[.]

42 U.S.C. § 1396d(a)(1)-(5) (1988).

■ Because abortion fits within many of the mandatory care categories, including "family planning," "outpatient services," "inpatient services," and "physicians' services," Medicaid covered medically necessary abortions between 1973 and 1976. In 1976, however, Congress passed the Hyde Amendment to the Department of Health, Education, and Welfare appropriation. The Hyde Amendment prohibits federal reimbursement for abortions except in circumstances Congress, rather than a doctor, deems medically necessary. Although the Hyde Amendment frees a state of the obligation to fund abortions for which federal money is denied, nothing in the Hyde Amendment purports to change a state's obligations with respect to those abortions for which federal funding is available.

Every year since 1976, Congress has passed some version of the Hyde Amendment. Although all versions of the Hyde Amendment have limited the definition of a medically necessary abortion, some versions have been more expansive than others. For example, the fiscal 1978 and 1979 versions allowed funding for abortions necessary to prevent "severe and long-lasting physical health damage to the mother," as well as for abortions for rape and incest victims and for abortions necessary to save the life of the mother. Pub.L. No. 94–439, § 209, 90 Stat. 1434 (1976). In contrast, between 1982 and 1993, the Hyde Amendment defined medically necessary abortions as only those performed to save the life of the mother.

For fiscal year 1994, Congress expanded the Hyde Amendment to allow federal funding for abortions of pregnancies resulting from rape or incest as well as abortions necessary to save the life of the mother. *See* The Departments of Labor, Health and Human Services, and Education, and Related Agencies Appropriations Act, 1994, Pub.L. No. 103–112, § 509, 107 Stat. 1082, 1113 (1993). This provision was renewed for the 1995 fiscal year. *See* Pub.L. No. 103–333, § 509, 108 Stat. 2539 (1994).

Following passage of the first Hyde Amendment, many states promulgated laws restricting Medicaid coverage to those abortions federally funded under the Hyde Amendment. Other states, including Michigan, continued to provide more expansive abortion coverage with state funds. In 1988, however, Michigan citizens voted to enact Section 109a, restricting state Medicaid coverage of abortions. Section 109a states:

> Notwithstanding any other provision of this act, an abortion shall not be a service provided with public funds to a recipient of welfare benefits, whether through a program of medical assistance, general assistance, or categorical assistance or through any other type of public aid or assistance program, unless the abortion is necessary to save the life of the mother. It is the policy of this state to prohibit the appropriation of public funds for the purpose of providing an abortion to a person who receives welfare benefits unless the abortion is necessary to save the life of the mother.

Social Welfare Act, Mich.Comp.Laws Ann. § 400.109a (West 1994 Supp.). Michigan has not amended Section 109a to conform to the 1994 version of the Hyde Amendment.

In April 1994, Planned Parenthood filed an action seeking declaratory judgment and an injunction of Section 109a because it conflicted with the Hyde Amendment. Two weeks later, three other reproductive health care facilities, Summit Medical Center, Michiana Abortion Clinic, and Northland Family Planning Clinic (the "Summit plaintiffs"), filed a similar action against the operation of Section 109a. The district court consolidated the two cases, and, since the parties agreed there were no factual issues in dispute, proceeded to a final resolution on the merits.

The district court held that Section 109a conflicted with the Medicaid Act as modified by the 1994 Hyde Amendment. The court issued a permanent injunction prohibiting Michigan from enforcing Section 109a "insofar as it prohibits state funding for abortions to terminate pregnancies resulting from acts of rape or incest." Michigan has appealed the ruling and the Summit plaintiffs have cross-appealed, contending that Section 109a should have been enjoined in its entirety.

## DISCUSSION

I. *The Effect of the Hyde Amendment on Section 109a*

■ Michigan contends that the district court erred when it determined that Section 109a impermissibly conflicts with federal law. We review the district court's decision *de novo.* *See Kraus v. Sobel Corrugated Containers, Inc.,* 915 F.2d 227, 229 (6th Cir. 1990); *Patton v. Bearden,* 8 F.3d 343, 346 (6th Cir.1993).

The Supremacy Clause states:

This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. Const. art. VI, cl. 2. If Section 109a conflicts with the program requirements of Medicaid, it must be held invalid under the Supremacy Clause. *See Rose v. Arkansas State Police,* 479 U.S. 1, 3, 107 S.Ct. 334, 334–35, 93 L.Ed.2d 183 (1986) (per curiam); *Planned Parenthood Ass'n v. Dandoy,* 810 F.2d 984, 988 (10th Cir.1987).

Although it is true that Title XIX requires only that the state exercise its discretion in creating a medical plan in a manner "reasonable" and "consistent with the objectives" of Medicaid, 42 U.S.C. § 1396a(a)(17) (1988); *Beal v. Doe,* 432 U.S. 438, 444, 97 S.Ct. 2366, 2371, 53 L.Ed.2d 464 (1977), a state "may not arbitrarily deny or reduce the amount, duration, or scope of a required service ... to an otherwise eligible recipient solely because of the diagnosis, type of illness, or condition." 42 C.F.R. § 440.230(c) (1994). Abortions, as we discussed above, fall within several of Medicaid's mandatory categories of care. The question, then, is whether Section 109a discriminates in its coverage of abortions on the basis of a patient's diagnosis and condition.

Denying a medical service in all cases but those where the patient's life is at risk "crosse[s] the line between permissible discrimination based on degree of need and enter[s] into forbidden discrimination based on medical condition." *Preterm Inc. v. Dukakis,* 591 F.2d 121, 126 (1st Cir.), *cert. denied,* 441 U.S. 952, 99 S.Ct. 2181, 2182, 60 L.Ed.2d 1057 (1979); *see also Hern v. Beye,* 57 F.3d 906, 910 (10th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 569, 133 L.Ed.2d 494, (1995) (No. 95–701); *Hodgson v. Board of County Comm'rs,* 614 F.2d 601, 608 (8th Cir.1980); *Zbaraz v. Quern,* 596 F.2d 196, 199 (7th Cir.1979), *cert. denied,* 448 U.S. 907, 100 S.Ct. 3048, 65 L.Ed.2d 1136 (1980). Michigan's law seeks to deny funding for all but the narrow class of abortions necessary to save the life of the mother. Under Title XIX, a state must provide medically necessary services to needy individuals. *See* 42 U.S.C. § 1396. Section 109a conflicts with this mandate. As the *Hern* court found, "a state law that categorically denies coverage for a specific, medically necessary procedure except in those rare instances when the patient's life is at stake is not a 'reasonable

standard[ ] ... consistent with the objectives of the [the Act],' 42 U.S.C. § 1396(a)(17), but instead contravenes the purposes of Title XIX." *Hern,* 57 F.3d at 911. We find, therefore, that Section 109a fails to fulfill the purposes of Title XIX.

Michigan's argument that the Hyde Amendment does not modify Title XIX is unavailing. The legislative history indicates that Congress intended the Hyde Amendment to define the range of medically necessary abortions covered under Title XIX. The debates touched upon a wide range of concerns, and recognized that, should the Hyde Amendment fail to pass, "every State will be required to provide matching funds for abortion on demand." 139 Cong.Rec. S12581 (daily ed. Sept. 28, 1993) (statement of Senator Hatch); *see also* 139 Cong. Rec. H4325–26 (daily ed. June 30, 1993) (House debate urging passage of the Hyde Amendment and recognizing that state funding for Medicaid is coextensive with federal funding). Thus, the Hyde Amendment is not, as Michigan claims, simply a federal appropriations bill; rather, it defines medically necessary abortions that must be funded by the federal government and by participating states.

Though Michigan urges otherwise, nothing in *Harris v. McRae,* 448 U.S. 297, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980), is contrary to our finding that the Hyde Amendment defines medically necessary abortions and therefore limits federal and state Medicaid funding. As the Court explained, "Title XIX itself provides for variations in the required coverage of state Medicaid plans *depending on changes in the availability of federal reimbursement* [.]" *Harris,* 448 U.S. at 310 n. 14, 100 S.Ct. at 2684 n. 14 (emphasis added). In this regard, we are further bolstered by the directive sent to state Medicaid directors by the Health Care Financing Administration following passage of the 1994 Hyde Amendment:

> As with all other mandatory medical services for which Federal funding is available, States are required to cover abortions that are medically necessary. By definition, abortions that are necessary to save the life of the mother are medically necessary. In addition, Congress this year

added abortions for pregnancies resulting from rape and incest to the category of medically necessary abortions for which funding is provided.... Therefore, abortions resulting from rape or incest should be considered to fall within the scope of services that are medically necessary.

Letter from Sally K. Richardson, Director of Medicaid Bureau, to all state Medicaid directors 2 (December 28, 1993). As the district court correctly noted, we accord deference to this reasonable agency interpretation of the statutory requirements of Medicaid. *See Good Samaritan Hosp. v. Shalala,* 508 U.S. 402, ——, 113 S.Ct. 2151, 2159, 124 L.Ed.2d 368 (1993).

Our decision is supported by the case law in other circuits. All circuits to address the interplay between the 1994 Hyde Amendment and state laws restricting abortion funding have held that a state participating in Medicaid must fund abortions of pregnancies resulting from rape or incest, as well as abortions necessary to save the life of the mother. *See Hope Medical Group for Women v. Edwards,* 63 F.3d 418 (5th Cir.1995); *Little Rock Family Planning Services v. Dalton,* 60 F.3d 497 (8th Cir.1995), *petition for cert. filed,* 64 U.S.L.W. 3380 (U.S. Nov. 14, 1995) (No. 95–766); *Hern v. Beye,* 57 F.3d 906 (10th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 569, 133 L.Ed.2d 494 (1995); *see also Elizabeth Blackwell Health Ctr. for Women v. Knoll,* 61 F.3d 170 (3d Cir.1995) (holding a Pennsylvania law regarding abortion reporting requirements invalid under 1994 Hyde Amendment). Earlier cases confronting conflicts between state law and previous Hyde Amendments have also uniformly held that participating states must fund those abortions defined as medically necessary by the Hyde Amendment. *See Roe v. Casey,* 623 F.2d 829 (3d Cir.1980); *Hodgson v. Board of County Comm'rs,* 614 F.2d 601 (8th Cir.1980); *Zbaraz v. Quern,* 596 F.2d 196 (7th Cir.1979), *cert. denied,* 448 U.S. 907, 100 S.Ct. 3048, 65 L.Ed.2d 1136(1980); *Preterm Inc. v. Dukakis,* 591 F.2d 121 (1st Cir.), *cert. denied,* 441 U.S. 952, 99 S.Ct. 2181, 2182, 60 L.Ed.2d 1057 (1979).

Finally, we note that Congress is capable of passing a bill to allow states to fund

abortions more narrowly than the federal government, but it has not done so. In the 1981 Hyde Amendment, Congress explicitly allowed states this freedom by adding language to the amendment that stated "the several States are and shall remain free not to fund abortions to the extent that they in their sole discretion deem appropriate." Pub.L. No. 96–369, § 101(c), 94 Stat. 1351, 1352–53 (1980). Moreover, in January 1995, a bill was introduced in the House that would allow a state to continue to receive federal Medicaid funds even if the state refused to fund abortions for rape and incest victims. *See* 141 Cong. Rec. H163–01, H169 (daily ed. Jan. 9, 1995) (speech of Representative Dickey, R–Ark., introducing H.R. 222). Although this particular bill did not become law, it is clear that if Congress wished to grant states the right to refuse to fund abortions for rape and incest victims, it could have done so explicitly in the 1994 Hyde Amendment or another bill. The fact that it did not do so reveals a congressional intent in accord with our conclusion in this case.

The text of Title XIX, the Hyde Amendment, and the accompanying regulations, as well as legislative intent and agency interpretation, lead us to conclude that Section 109a impermissibly conflicts with federal law. We affirm, therefore, the district court's determination that, under the Supremacy Clause, Section 109a is invalid.

## II. *The Summit Plaintiffs' Cross–Appeal*

■ The Summit plaintiffs contend in their cross-appeal that the district court erred when it issued an injunction that altered the language of the Michigan statute in order to conform the statute to federal law. The district court enjoined section 109a "insofar as it prohibits state funding for abortions to terminate pregnancies resulting from acts of rape or incest." The Summit plaintiffs argue that the district court's injunction must be vacated and the statute enjoined in its entirety. For support, the Summit plaintiffs cite *Little Rock Family Planning Services v. Dalton,* 60 F.3d 497 (8th Cir.1995), *petition for cert. filed,* 64 U.S.L.W. 3380 (U.S. Nov. 14, 1995) (No. 95–766). In *Little Rock,* the court held that an Arkansas consti-

tutional amendment restricting abortion funding to cases where the life of the mother is in jeopardy impermissibly conflicted with federal law. The district court in *Little Rock* had decided to enjoin the amendment as a whole. The Eighth Circuit affirmed, stating that this result allowed the court to avoid "[r]edrafting the amendment or writing in exceptions in order to cure the invalidity presented by the plain meaning of its language." *Id.* at 503 (citing *Valley Family Planning v. North Dakota,* 661 F.2d 99 (8th Cir.1981)).

Similarly, in *Roe v. Casey,* 623 F.2d 829, 837–38 (3d Cir.1980), the court found that a Pennsylvania law limiting the state's commitment to fund abortions to those abortions "necessary to save the life of the mother" conflicted with the Hyde Amendment, which, in the fiscal year in question, provided federal funds for abortions necessary to save the life of the mother and those "necessary for the victims of rape or incest." The court affirmed the district court's injunction of the entire Pennsylvania statute, stating that if the court were to conform the Pennsylvania statute to federal law, it would "exceed[ ] our judicial role, and we would be engaging in positive legislative enactment, a proper function of the Pennsylvania Assembly...." *Id.* at 837.

The Summit plaintiffs also call our attention to this court's opinion in *Eubanks v. Wilkinson,* 937 F.2d 1118 (6th Cir.1991) (Merritt, *C.J.*). In *Eubanks,* the district court held unconstitutional a Kentucky statute requiring consent of "both parents, if available" for a minor to obtain an abortion. In fashioning a remedy, the district court rewrote the statute to read "in the case of a minor living at home with both parents." *Id.* at 1120–21.

This court held that the district court erred when it redrafted the statute rather than declaring the provision invalid and severing it from the constitutional portions of the statute. In reaching this decision, we looked to Kentucky judicial opinions, stating that "[i]t would seem anomalous in severing Kentucky statutes for a federal court to act more intrusively than would the highest court of the Commonwealth when consider-

ing whether to modify a state statute after a finding of unconstitutionality." *Id.* at 1122. We surveyed Kentucky cases and found that the Kentucky judiciary generally does not choose to redraft invalid statutes, instead leaving the task to the legislature. We went on to note that, with narrow exceptions, the federal judiciary similarly declines to rewrite statutes to create constitutionality. *Id.* We therefore concluded that, although a court may permissibly *sever* some provisions of a statute and leave others intact, a court may not *rewrite* a statute to render it constitutional. *Id.* at 1127–28.

In contrast to the cases discussed above, several cases appear to support Michigan's contention that the district court's injunction is permissible. In the recent case of *Hern v. Beye,* 57 F.3d 906 (10th Cir.1995), *cert. denied,* ––– U.S. –––, 116 S.Ct. 569, 133 L.Ed.2d 494 (1995), the court found that Colorado laws refusing to fund abortions in cases of rape or incest were invalid in light of Title XIX. The court affirmed the district court remedy which enjoined the statutes "insofar as those statutes or rules are more restrictive" than federal law. *Id.* at 908–09 n. 2. The court stated that "so long as Colorado continues to accept federal Medicaid funds[, it is enjoined] from enforcing the abortion funding restriction in a manner that conflicts with federal Medicaid law." *Id.; see also Utah Women's Clinic, Inc. v. Graham,* 892 F.Supp. 1379, 1384 (D.Utah 1995).

In *Planned Parenthood v. Dandoy,* 810 F.2d 984 (10th Cir.1987) (per curiam), the court found that a Utah statute denying funding for family planning services for sexually active minors in the absence of written parental consent conflicted with federal Medicaid law. The district court's remedy was an injunction that stated that Utah was enjoined from enforcing its statute "to the extent that it conflicts with Title XIX of the Social Security Act" so long as Utah continued to accept Title XIX funding. *Id.* at 986. The court held that the remedy was proper because "Utah may participate in the program and thereby accept the conditions attached by federal acts which may be contrary to state law.... If the choice is to participate, there is thereby accepted a limitation

or restriction on state statutes or regulations which conflict with the federal statutes." *Id.* at 988.

In *Preterm Inc. v. Dukakis,* 591 F.2d 121 (1st Cir.), *cert. denied,* 441 U.S. 952, 99 S.Ct. 2181, 2182, 60 L.Ed.2d 1057 (1979), the court found that a Massachusetts statute allowing funding only for abortions necessary to prevent death of the mother and for abortions for rape and incest victims conflicted with the Hyde Amendment, which, in the relevant fiscal year, allowed federal funding for abortions necessary to preserve the life of the mother, for rape or incest victims, and to prevent "severe and long-lasting" health damage to the mother. The court, noting that the state requested the statute to be modified and made constitutional, affirmed the district court's remedy "enjoining implementation of [the Massachusetts statute] insofar as it prohibits state reimbursement for abortions which would qualify for federal reimbursement under the terms of the Hyde Amendment." *Id.* at 134.

In *Zbaraz v. Quern,* 596 F.2d 196 (7th Cir.1979), *cert. denied,* 448 U.S. 907, 100 S.Ct. 3048, 65 L.Ed.2d 1136 (1980), the court held that an Illinois statute prohibiting state funding for all abortions except those necessary to preserve the life of the mother was in conflict with the relevant Hyde Amendment, which was the same as that at issue in *Preterm.* The court remanded to the district court and, in doing so, noted "the permanent injunction granted by the district court must be modified forthwith to require defendants to grant payments to plaintiff physicians and other recognized and legal medical providers for the rendition of medical services to indigent pregnant women for those abortions fundable under the Hyde Amendment." *Id.* at 202.

As may be seen, the two lines of cases presented by the parties appear at odds. These cases do not engage in a debate regarding the proper result, or justify their results in light of each other. However, we believe that the cases can be reconciled and note the following two points to support our conclusion.

First, contrary to Michigan's claim, the *Hern* line of cases is not "precisely" like the

case at hand. In *Hern, Dandoy, Preterm,* and *Zbaraz,* the state statutes were enjoined "to the extent that [they] conflict[ ] with [federal law]," or by some similar language. *See Hern,* 57 F.3d at 908–09 n. 2; *Dandoy,* 810 F.2d at 989; *Preterm,* 591 F.2d at 134; *Zbaraz,* 596 F.2d at 202. In contrast, the district court's injunction in this case specifically requires Michigan to fund abortions for victims of rape or incest. It states that the Michigan statute is enjoined "insofar as it prohibits state funding for abortions to terminate pregnancies resulting from acts of rape or incest." Thus, it substantively modifies the Michigan statute by adding two exceptions. Although we do not doubt that the district court's intent was to bring the Michigan law in line with federal law, as the *Hern, Dandoy, Preterm,* and *Zbaraz* courts had done, the result of its injunction was more intrusive.

Second, it is important to note the procedural postures of the cases cited by the parties. In all but one, the appellate court affirmed the district court, whether the district court had enjoined the offending state law in part or in whole. Thus, the appellate courts in *Casey* and *Little Rock Family Planning Services* did not take issue with specific language of a district court injunction; rather, these courts agreed with the general principle that courts should not intrude into the legislative arena. The *Hern, Dandoy, Preterm,* and *Zbaraz* courts would no doubt agree with this sentiment. It is likely that the appellate courts in these cases considered the district court injunctions non-legislative and narrowly drawn. Either result may be permissible in a given case; the particular result reached may have quite a bit to do with the appellate court's unwillingness to reverse a well-reasoned district court decision.

The only case cited by the parties to reverse the district court's injunction is *Eubanks.* In that case, as here, the district court actually changed the provisions of the statute in order to cure its vagueness. It is true that in *Eubanks* we reversed the district court and enjoined the statute as a whole rather than, for example, enjoining it "insofar as the statute's vagueness is unconstitution-

al," as in *Hern, Dandoy, Preterm,* and *Zbaraz.* We elected to enjoin the statute as a whole because there were *several* options open to the Kentucky legislature once its statute was declared unconstitutional. Because a state may remedy a vagueness problem in a variety of ways, we recognized that the state legislature, rather than the judiciary, should choose the path to follow. In the case at hand, however, as in *Hern, Dandoy, Preterm,* and *Zbaraz,* the state has but one choice: it can only restrict abortion funding for Medicaid-eligible women as permitted by the Hyde Amendment.

Once reconciled, the two lines of cases support the resolution to this case. Because the district court's injunction adds language to section 109a by listing the specific funding requirements for pregnancies resulting from rape or incest, the injunction must be vacated. However, rather than enjoining the statute as a whole, we order that the injunction be modified to prevent section 109a from operating "insofar as it is more narrow than permitted by the Hyde Amendment in effect during the relevant fiscal year." This result comports with *Hern, Dandoy, Preterm,* and *Zbaraz,* while avoiding the more "draconian" result of enjoining the entire statute. *See Little Rock Family Planning Services,* 60 F.3d at 504 (Bowman, J., concurring & dissenting). As Judge Bowman noted:

> [T]he Supremacy Clause can be given its due by measures far less draconian and far less intrusive on [ ] public policy ... than the drastic remedy that has been imposed here.... An order ... tailored to fit the circumstances of the case[ ] would uphold the supremacy of federal law in the somewhat narrow range of cases in which it trumps state law without running roughshod over the state interest....

*Id.*

We believe that this solution is desirable for two reasons. First, it takes into account the changeable nature of spending bills in general, and the Hyde Amendment in particular, which in some years are very restrictive and in other years are less so. Second, it maintains the appropriate bounds of federalism by allowing the state to continue its more

narrow policy in any program supported by purely state funds.

## CONCLUSION

For the reasons stated above, we order that the injunction be modified to prevent application of Section 109a "insofar as it is more narrow than permitted by the Hyde Amendment in effect during the relevant fiscal year." In all other respects, we affirm.