Soila CAMACHO, Sonia Denise Grover, Texas Welfare Reform Organization, El Paso County Hospital District d/b/a R.E. Thomason General Hospital, Plaintiffs,

v.

TEXAS WORKFORCE COMMISSION, Texas Health and Human Services Commission, and Texas Department of Human Services, Defendants.

No. A–04–CA–017SS.

United States District Court,
W.D. Texas,
Austin Division.

April 12, 2004.

P. M. Schenkkan, Graves, Mary A. Keeney, Graves, Dougherty, Hearon Etal, Austin, TX, Bruce P. Bower, Texas Legal Services Center, Austin, TX, for Soila Comacho, Sonia Denise Grover, Texas Welfare Reform Organization.

Jose R. Rodriguez, El Paso County Atty., El Paso, TX, Kitty Schild, El Paso County Assist. Atty., El Paso, TX, for El Paso County Hosp. Dist.

Robert L. Seibert, Assistant Attorney General, Austin, TX, Raymond Charles Winter, Assistant Attorney General, Administrative Law Division, Austin, TX, Nancy K. Juren, Office of Attorney General, General Litigation Division, Austin, TX, Vijay Shanker, Priti Seksaria Agrawal, William D. Iverson, Covington & Burling, Washington, DC, for Texas Workforce Com'n, Texas Health and Human Services Com'n, Texas Dept. of Human Services.

## *ORDER*

SPARKS, District Judge.

BE IT REMEMBERED on the 31st day of March 2004, the Court called the above-styled cause for hearing on Plaintiffs' Application for Preliminary Injunction [# 9], and the parties appeared through counsel of record. Before the Court are Plaintiffs' Application for Preliminary Injunction [# 9], Defendant's Response to Plaintiffs' Application [# 14]; and Plaintiffs' Reply [# 23]. Having considered the above documents, the evidence and arguments presented at the hearing, the case file as a whole, and the applicable law, the Court enters the following opinion and order.

## I. Background

Effective November 18, 2003, the Texas Workforce Commission ("TWC") adopted several new rules limiting eligibility for Medicaid health coverage. These rules apply to poor adults with children who are receiving both cash assistance under the federal Temporary Assistance to Needy Families ("TANF") program and medical assistance under the federal Medicaid program. Separate federal law governs the

TANF and Medicaid programs. Plaintiffs contend federal Medicaid law limits termination of Medicaid to only those TANF recipients who are "refusing to work" or refusing to cooperate with enforcement of child support. According to Plaintiffs, the challenged portions of the TWC rules would cut-off TANF recipients' Medicaid for other, non-permitted reasons.

Plaintiffs Soila E. Camacho ("Camacho"), Sonia Denise Grover ("Grover"), Texas Welfare Reform Organization ("TWRO"), and El Paso County Hospital District d/b/a R.E. Thomason General Hospital ("Thomason") filed in state district court an Original Petition and Application for Declaratory Relief, Temporary Injunction and Temporary Restraining Order, complaining of Defendants the TWC, the Texas Health and Human Services Commission ("THHSC"), and the Texas Department of Human Services ("TDHS").

Plaintiff Camacho has been a recipient of TANF and Medicaid and has recently reapplied for these benefits after being terminated from her job. Plaintiff Grover is currently a recipient of TANF and Medicaid subject to the challenged TWC rules. Plaintiff TWRO is an organization that advocates on behalf of its members, including recipients of TANF and Medicaid who are at risk of losing their Medicaid benefits under the challenged rules. Plaintiff Thomason is a county hospital district required by state law to provide indigent care. According to Thomason, it will suffer financial losses in providing health care to those TANF recipients who would lose their Medicaid benefits under the new rules. Thomason argues it will immediately lose capitation [1] payments to its health maintenance organization if the challenged rules are implemented. Defendant TWC is the state agency that adopted the chal-

lenged rules. Defendant TDHS is the state agency authorized to cut-off Medicaid assistance under the new TWC rules. Defendant THHSC is the state agency with responsibility for implementing the Texas Medicaid program.

The state district court issued a temporary restraining order that the parties agreed to extend until a state court ruling on the temporary injunction hearing set for January 20, 2004, or March 31, 2004, whichever first occurred. On January 12, 2004, Defendants removed the case to this Court. Plaintiffs filed an Application for Preliminary Injunction with new affidavits, seeking a continuance of the preliminary injunction pending this Court's determination of the merits.

## II. Relevant Federal Law

This case concerns two separate federal statutory schemes-Temporary Assistance to Needy Families and Medicaid.

### A. Temporary Assistance to Needy Families

The purpose of the TANF program is "to increase the flexibility of States in operating a program designed to" meet certain goals including "end[ing] the dependence of needy parents on government benefits by promoting job preparation, work, and marriage." 42 U.S.C. § 601(a). As a condition of receiving TANF grants, states must ensure certain percentages of families participate in work activities. 42 U.S.C. § 607(a). "Work activities" include:

(1) unsubsidized employment;

(2) subsidized private sector employment;

---

1. In United States health services, capitation refers to a fixed "per capita" amount that is paid to a hospital, clinic, or doctor for each person served.

(3) subsidized public sector employment;

(4) work experience ...;

(5) on-the-job training;

(6) job search and job readiness assistance;

(7) community service programs;

(8) vocational educational training ...;

(9) job skills training directly related to employment;

(10) education directly related to employment, in the case of a recipient who has not received a high school diploma or a certificate of high school equivalency;

(11) satisfactory attendance at a secondary school or in a course or study leading to a certificate of general equivalence ... and

(12) the provision of child care services to an individual who is participating in a community service program.

42 U.S.C. § 607(d). Each of these TANF activities consists of either actual work or education, training, or preparation for work. Federal law also authorizes states to establish other, non-work requirements related to promoting "individual responsibility" as part of their TANF programs. Federal law grants states the option to impose a penalty on TANF recipients who violate these non-work requirements. *See* 42 U.S.C. §§ 601–608.

**B. Medicaid**

■ Under the federal Medicaid program, 42 U.S.C. § 1396, the federal government pays up to 60 percent of the costs of medical care for eligible participants. States and in some cases localities, pay the balance of the costs of services. 42 U.S.C. § 1396a(a)(2). A state's participation in the Medicaid program is voluntary; however, if a state chooses to participate, its Medicaid plan must comply with the feder-

al Medicaid statute. *Abbeville Gen. Hosp. v. Ramsey*, 3 F.3d 797, 800 (5th Cir.1993), *cert. denied*, 511 U.S. 1032, 114 S.Ct. 1542, 128 L.Ed.2d 194 (1994). Individuals who qualify for Medicaid include low-income families and children, and low-income aged, blind, or disabled individuals. 42 U.S.C. § 1396; *see also Blanchard v. Forrest*, 71 F.3d 1163, 1166 (5th Cir.1996).

42 U.S.C. § 1396u–1(b)(3) authorizes states to terminate Medicaid benefits of adult individuals whose TANF benefits are terminated for non-compliance with work requirements:

*In the case of an individual who -*

(i) is receiving cash assistance under a State program funded under part A of subchapter IV of this chapter,

(ii) is eligible for medical assistance under this subchapter on a basis not related to section 1396a(1) of this title, and

(iii) *has the cash assistance under such program terminated* pursuant to section 607(e)(1)(B) of this title (as in effect on or after the welfare reform effective date) *because of refusing to work*

the State may terminate such individual's eligibility for medical assistance under this subchapter until such time as there no longer is a basis for the termination of such cash assistance because of such refusal.

42 U.S.C. § 1396u–1(b)(3)(A) (emphasis added). All TANF recipients subject to the work requirement under the TANF program are potentially at risk of losing their Medicaid for "refusing to work" when a state exercises this option.

**III. Texas Changes in Temporary Assistance to Needy Families and Medicaid under House Bill 2292**

As permitted by federal law, Texas includes both the work and the non-work requirements for the TANF program in a Personal Responsibility Agreement

("PRA") that each adult TANF recipient must agree to and sign. Tex. Hum. Res. Code § 31.0031. The PRA requires:

(1) the parent of a dependent child cooperate with the department and the Title IV–D agency if necessary to establish the paternity of the dependent child and to establish or enforce child support;

(2) if adequate and accessible providers of the services are available in the geographic area and subject to the availability of funds, each dependent child, as appropriate, complete early and periodic screening, diagnosis, and treatment checkups on schedule and receive the immunization series prescribed by Section 161.004, Health and Safety Code, unless the child is exempt under that section;

(3) each adult recipient, or teen parent recipient who has completed the requirements regarding school attendance in Subdivision (6), not voluntarily terminate paid employment of at least 30 hours each week without good cause in accordance with rules adopted by the department;

(4) each adult recipient for whom a needs assessment is conducted participate in an activity to enable that person to become self-sufficient;

(5) each caretaker relative or parent receiving assistance not use, sell, or possess marihuana or a controlled substance in violation of Chapter 481, Health and Safety Code, or abuse alcohol;

(6) each dependent child younger than 18 years of age or teen parent younger than 19 years of age attend school regularly, unless the child has a high school diploma or high school equivalency certificate or is specifically exempted from school attendance under Section 25.086, Education Code;

(7) each recipient comply with department rules regarding proof of school attendance; and

(8) each recipient attend appropriate parenting skills training classes, as determined by the needs assessment.

Tex. Hum. Res. Code § 31.0031(d). In short, the PRA requires adult TANF recipients not only to work and cooperate with child support, but also to keep their children in school and up-to-date on their immunizations and health and dental check-ups and, with respect to their own personal conduct, to refrain from drug and alcohol abuse.

Until 2003, Texas, like other states, penalized TANF recipients' failure to comply with non-work requirements by ordering reductions in cash assistance. In the 2003 Regular Session, the Texas Legislature passed House Bill 2292 ("HB 2292"). HB 2292 requires the state to immediately terminate *all* TANF cash assistance for a recipient's failure to cooperate with PRA requirements. Tex. Hum. Res. Code §§ 31.0031 & 31.0032. Plaintiffs do not contest this election is authorized under federal law.

In addition, HB 2292 authorizes the state to exercise the option under federal law to terminate Medicaid to adult TANF recipients for "refusing to work." Tex. Hum. Res. Code § 31.0032(c). This statute provides:

> *To the extent allowed by federal law*, the Health and Human Services Commission or any health and human services agency, as defined by Section 531.001, Government Code, may deny medical assistance for a person who is eligible for financial assistance but to whom that assistance is not paid because of the person's failure to cooperate. Medical assistance to the person's family may not be denied for the person's failure to cooperate. Medical assistance may not

be denied to a person receiving assistance under this chapter who is under the age of 19, a pregnant adult, or any other person who may not be denied medical assistance under federal law.

TEX. HUM. RES. CODE § 31.0032(c) (emphasis added). Plaintiffs contend federal law does not permit TWC to cut-off Medicaid benefits to recipients who are not "refusing to work", but who are merely failing to comply with a TANF PRA non-work requirement.

## IV. The Challenged Texas Workforce Commission Rules

### A. Rule 811.2(11)

Rule 811.2(11) states:

Work Requirement—For the purpose of 45 U.S.C. § 607 and 45 CFR § 261.10, a Choices[2] individual is deemed to be engaged in work by cooperating with:

(A) all requirements set forth in the family employment plan, as set forth in this chapter; and

(B) all TANF Core and Non–Core activities, as set forth in this chapter.

40 TEX. ADMIN. CODE § 811.2(11).

### B. Rule 811.23

Rule 811.23(e) provides:

A Board shall ensure that mandatory individuals are notified of their responsibility to participate in job readiness activities as set forth in § 811.41(d) of this chapter.

40 TEX. ADMIN. CODE § 811.23(e).

### C. Rule 811.41

Rule 811.41 provides:

(d) Job readiness activities are designed to assist Choices individuals with addressing issues that will aid them in obtaining and retaining employment, including:

(3) activities essential to the health, safety, and welfare of their families, as follows:

(A) activities associated with maintenance of their children's health and dental checkups, as required by § 3.301 of this title;

(B) activities associated with maintenance of their children's immunizations, as required by § 3.301 of this title;

(C) activities necessary to ensure their children's school attendance, as required by § 3.301 of this title; and

(D) activities necessary to abstain from the use, possession, or sale of controlled substances, and to abstain from alcohol abuse, including participation in counseling.

40 TEX. ADMIN. CODE § 811.41(d)(3).

### D. Rule 811.25(a)(1)(A)

Rule 811.25 states:

(a) Participation hours are subject to the restrictions regarding TANF core and TANF non-core activities as set forth in 45 U.S.C. § 607, 45 C.F.R. §§ 261.10, 261.12, 261.31, 261.32, and 261.33, and as set forth in this section and § 811.26 of this subchapter.

(1) TANF core activities are:

(A) job search and job readiness assistance, as described in § 811.41 of this chapter;

40 TEX. ADMIN. CODE § 811.25(a)(1)(A).

## V. Standard for Preliminary Injunction

■ To obtain a preliminary injunction, a party must show (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted; (3) the threatened injury to plaintiffs outweighs the in-

---

**2.** "Choices" is the name of the TANF employ-    ment program.

jury to defendant; and (4) granting the injunction does not disserve the public interest. *Guy Carpenter & Co., Inc. v. Provenzale,* 334 F.3d 459, 464 (5th Cir. 2003). A preliminary injunction is an extraordinary remedy. Thus, a court may grant a preliminary injunction only when the party requesting makes a clear showing of these four factors. *Id.*

### A. Plaintiffs are Likely to Prevail on the Merits

█ Plaintiffs have shown a strong likelihood of success on the merits. Texas' participation in Medicaid is voluntary, however, once Texas chose to participate, its Medicaid plan must comply with the federal Medicaid statute and regulations. *Blanchard v. Forrest,* 71 F.3d 1163, 1166 (5th Cir.1996); *Alabama Nursing Home Ass'n v. Harris,* 617 F.2d 388, 396 (5th Cir.1980); *see also Planned Parenthood v. Sanchez,* 280 F.Supp.2d 590, 606 (W.D.Tex. 2003) ("States are not required to receive federal funding, but when they do, they must follow federal requirements.").

Plaintiffs argue Defendants' attempt to more strictly limit Medicaid benefits fails because Congress deliberately limited the sanction of withdrawal of benefits to adults terminated from TANF only for "refusing to work" under Section 607. This Court agrees. 42 U.S.C. § 1396u–1(b)(3) authorizes states to terminate Medicaid *only* when the non-pregnant adult's TANF cash assistance is terminated "pursuant to section 607(e)(1)(B) of this title . . . because of refusing to work." 42 U.S.C. § 607(e)(1)(B) authorizes a state to terminate a TANF recipient who "refuses to engage in work required in accordance with this section." Congress' reference to Section 607 in the Medicaid statute is a deliberate restriction on a state's authority to terminate Medicaid. The federal TANF statute includes other provisions

specifically authorizing a state to impose alternative sanctions if an adult fails to ensure a minor child attends school (42 U.S.C. § 604(i)) and if an individual fails to comply with an individual responsibility plan. 42 U.S.C. § 608(b)(3). Had Congress intended to permit a state to terminate Medicaid based on an adult's failure to ensure a child's school attendance or non-compliance with other non-work requirements of the individual responsibility plan, it would have provided for these penalties. Because Congress carefully limited a state's Medicaid sanction authority to Section 607 for "refusing to work," TWC's rules violate 42 U.S.C. § 1396u–1(b)(3).

Importantly, TWC imposes the PRA requirements, not as an alternative to working, but as additional requirements. Accordingly, a parent who is working, but fails to ensure his or her child is timely immunized, would lose Medicaid assistance. Other courts have enjoined state laws and regulations that add eligibility requirements to federal funding statutes. In *Carleson v. Remillard,* 406 U.S. 598, 92 S.Ct. 1932, 32 L.Ed.2d 352 (1972), the Supreme Court invalidated a state law preventing children whose fathers were serving in the military from receiving AFDC benefits, finding Congress did not intend to exclude a class of benefit recipients. *Carleson,* 406 U.S. at 604, 92 S.Ct. 1932. In *Jones v. T.H.,* 425 U.S. 986, 96 S.Ct. 2195, 48 L.Ed.2d 811 (1976), the Supreme Court affirmed a three-judge district court's holding that a Utah regulation was inconsistent with Title XIX. The Utah regulation prohibited health care providers from giving minors federally-funded family planning assistance absent parental consent. *See T.H. v. Jones,* 425 F.Supp. 873, 875–76 (D.Utah 1975). The court held the Utah regulation conflicted with federal law because "[t]he state's regulations impermissibly engraft upon the federal scheme a condition for eligibility where Congress

has undertaken fully to define the class of persons who may receive family planning assistance." *T.H.,* 425 F.Supp. at 878. This conflict, the court found, "constitutes an important disagreement affecting the scope and effect of federal family planning assistance. Under such circumstances, federal law must control." *T.H.,* 425 F.Supp. at 880.

Following the *T.H.* decision, the Tenth Circuit invalidated a Utah statute prohibiting medical providers from receiving Medicaid reimbursement for providing contraceptive services to minors without parental consent. *See Planned Parenthood Ass'n of Utah v. Dandoy,* 810 F.2d 984 (10th Cir.1987). The court found the state requirement conflicted with Title XIX because:

> The defendant provides the services to some persons eligible under Title XIX but not to others. The defendant thus has excluded some persons from the general group who are eligible for the particular health care here concerned. The result is that care to designated individuals in this large group to whom health care is to be available is refused by the state imposed condition.

*Dandoy,* 810 F.2d at 988. The court clarified the choice states must make when choosing to received federal funding: "Utah may participate in the program and thereby accept the conditions attached by the federal acts which may be contrary to state law or unwanted or instead choose not to participate and to use its own funds as it wishes." *Dandoy,* 810 F.2d at 988.

These cases establish a state cannot withhold assistance from individuals who met the federal eligibility requirements, simply because the individuals do not meet the state's additional requirements. Here, Texas is withholding Medicaid benefits from otherwise eligible individuals, based on their failure to meet state imposed conditions.[3]

The invalidity of Defendants' position is further supported by the testimony of Cheryl Camillo, a Health Insurance Specialist with the United States Department of Health and Human Services. She advised:

> [A] state cannot terminate the Medicaid eligibility of an individual receiving TANF cash assistance whose TANF assistance is reduced due to the individual's failure to comply with an Individual Responsibility Plan.

> So regarding your state's questions, the state cannot terminate a TANF recipient's Medicaid eligibility if the individual refuses to comply with an Individual Responsibility Plan. However, the state can terminate the individual's Medicaid eligibility if the individual's TANF eligibility were terminated due to a failure to engage in one of the work activities listed above [in 42 U.S.C. § 607].

Plaintiffs' Application for Preliminary Injunction [# 9], Exh. F. Moreover, the United States Department of Health and Human Services, which is charged with interpreting and implementing Section 607, has stated "we have no authority to add to the list of 12 work activities" found in Section 607. 64 Fed.Reg. 17720, 17777, 1999 WL 197996 (April 12, 1999). Indeed, Albert Hawkins, Executive Commissioner of Defendant THHSC, has represented to state legislators "any attempt by the State to broaden the definition of 'work activities' for purposes of measuring the State's accountability under section 607 would be contrary to federal law." Plaintiffs' Application for Preliminary Injunction [# 9], Exh. M (October 1, 2003 Letter to Texas

3. It is immaterial whether the restrictions result in a theoretical "good" or the actual intent of the state is to improve upon the Medicaid program.

Legislators) at 3. No state other than Texas terminates Medicaid for non-work program violations. Plaintiffs' Application for Preliminary Injunction [# 9], Exh. F at 6.

Based on the record before the Court at this time, the Court finds Plaintiffs have demonstrated a probability of success on the merits. Congressional intent in Medicaid is clear—to protect the working welfare recipient's health. Congress did not authorize states in pursuit of broader social goals, no matter how desirable, to cut-off Medicaid benefits to a welfare recipient who is, in fact, working.

### B. Plaintiffs Have Shown Irreparable Harm

■ Plaintiffs argue, unless enjoined, Defendants will terminate Medicaid coverage pursuant to the disputed TWC rules by not sending out Medicaid cards to TANF recipients who would otherwise receive them—TANF recipients who are not refusing to work but who are in sanction status under the disputed TWC rules. If Plaintiffs Camacho and Grover lose their Medicaid coverage, they contend they cannot pay for their own health care needs, and their health and ability to work and to care for their children will be irreparably impaired. Plaintiff TWRO argues its members are at similar immediate risk. Plaintiff Thomason contends it will suffer irreparable financial losses in Medicaid reimbursements and in capitation payments from the Texas Medicaid program. These allegations satisfy Plaintiffs' burden to demonstrate irreparable injury.

### C. No Harm to Defendants

■ Plaintiffs must show their threat of irreparable harm outweighs the potential injury Defendants face if a preliminary injunction is granted. In opposing injunctive relief in the state court Defendants asserted the imposition of these rules was essential to state budgetary savings.[4] Plaintiffs' Application for Preliminary Injunction [# 9], Exh. F at 19. This Court has previously rejected this argument as a matter of law. "[A] state's budget problems cannot serve as an excuse for altering federal eligibility requirements for federal funding; if they could, the federal requirements would become superfluous." *Planned Parenthood v. Sanchez*, 280 F.Supp.2d 590, 606 (W.D.Tex.2003). The threatened injuries to Plaintiffs outweigh any damage the injunction might cause Defendants. Accordingly, the balance of harms supports the granting of injunctive relief.

### D. The Public Interest Favors the Preliminary Injunction

■ Finally, Plaintiffs must show the public interest is served by granting an injunction. Clearly, the enforcement of these TWC rules will result in a reduction in Medicaid assistance that Congress intended to fund. "[T]he public interest always is served when public officials act within the bounds of the law and respect the rights of the citizens they serve." *Finlan v. City of Dallas*, 888 F.Supp. 779, 791 (N.D.Tex.1995)(quoting *Nobby Lobby, Inc. v. City of Dallas*, 767 F.Supp. 801 (N.D.Tex.1991) *aff'd*, 970 F.2d 82 (5th Cir. 1992)). Accordingly, the Court finds the public interest will be served by allowing Plaintiffs to continue receiving Medicaid assistance—benefits Congress clearly intended to fund.

---

4. Indeed, the Legislative Budget Board explained in its fiscal note to HB 2292, the TANF/Medicaid sanctions would result in estimated savings of approximately $14 million per year to be available in state revenues. Plaintiffs' Application for Preliminary Injunction [# 9], Exh. F at 19.

## VI. Conclusion

In accordance with the foregoing:

IT IS ORDERED that Plaintiffs' Application for Preliminary Injunction [# 9] is GRANTED.

### ORDER OF PRELIMINARY INJUNCTION

BE IT REMEMBERED on the 12th day of April 2004 the Court, having entered its order of this date granting Plaintiffs' Application for Preliminary Injunction [# 9], enters the following.

IT IS ORDERED, ADJUDGED, and DECREED that from the date of entry of this order until and to the fourteenth day after entry of final judgment on the merits or until further order of this Court, Defendants Texas Workforce Commission, the Texas Health and Human Services Commission, and the Texas Department of Human Services in this cause be, and hereby are, commanded forthwith to desist and refrain from implementing or in any way making effective Texas Workforce Commission Rules 811.2(11)(A) and (B), 811.25(a)(1)(A), and 811.41(d)(3)(A)-(D), to the extent those rules apply the job readiness activities in Texas Workforce Commission Rule 811.41(d)(3) and the parenting skills training in Texas Workforce Commission Rule 811.52(4), (5), (6), and (7) as grounds for terminating Medicaid, or otherwise redefining by rule "work" or "work requirements" or "work activities" or "job readiness" to include obtaining children's immunizations, check-ups, school attendance, or refraining from drug or alcohol abuse or any other non-work requirements for purposes of Medicaid eligibility. This order does not affect grounds for terminating Temporary Assistance to Needy Families cash assistance.